**CHEVRON CHEMICAL COMPANY, a corporation, Plaintiff,**

v.

**Douglas M. COSTLE, Administrator, United States Environmental Protection Agency, Defendant.**

Civ. A. No. 79–532.

United States District Court, D. Delaware.

Aug. 5, 1980.

■■■■■■■■■■■■■■■■■

Richard J. Abrams, Richards, Layton & Finger, Wilmington, Del., of counsel, Anthony P. Brown, C. Douglas Floyd, and Brian D. Bellardo, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

James W. Garvin, Jr., U. S. Atty., and Peggy L. Ableman, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Patrick J. Cafferty, Jr., Dept. of Justice, Edward C. Gray, U. S. Environmental Protection Agency, Washington, D. C., for defendant.

## OPINION ON MOTION FOR INJUNCTION PENDING APPEAL

MURRAY M. SCHWARTZ, District Judge.

Plaintiff Chevron Chemical Company ("Chevron") has filed a motion pursuant to Fed.R.Civ.P. 62(c)[1] for an injunction pending disposition of its appeal of this Court's June 5, 1980 Opinion and Order. That Order denied Chevron's request for a preliminary injunction and granted the motion for summary judgment of defendant Douglas M. Costle, Administrator of the U.S. Environmental Protection Agency ("EPA").

Without repeating the extensive factual and statutory background of this controversy, a brief summary is appropriate. Chevron is a manufacturer and marketer of pesticide products. Under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 135 et seq., marketability of pesticides is conditioned upon the registration of the pesticide by EPA. The registration process is designed to assure the safety and efficacy of these products through the submission of test data by the applicants. This data often contains trade secrets or other confidential information.

As a result of a series of amendments to FIFRA enacted in 1972, 1975 and 1978, EPA is authorized to refer to certain of the data submitted by one applicant to support the application of a second company seeking to register the same or a similar pesticide. Varying degrees of protection, including the payment of compensation by the second company to the original data submitter, are triggered by the age of the data in question.

The dispute in the instant case arose when several of Chevron's competitors applied for registrations for the pesticides, naled and paraquat, both of which had been registered previously by Chevron. EPA intended to rely on test data submitted by Chevron during the 1960's and 1970's to support these subsequent applications. In response, Chevron sought to enjoin EPA's use of its data both as an unconstitutional "taking" of its property and as a denial of due process. In support of its taking argument, Chevron contended that EPA was not authorized to consider data submitted prior to 1970 to support a competitor's application, that the taking was for a private rather than a public purpose and that no remedy for just compensation was available to Chevron in the Court of Claims. Its due process argument was bottomed on the allegedly unconstitutional retroactive effect of the statute.

In the June 5, 1980 Opinion the Court did not decide whether EPA's consideration of Chevron's data constituted a taking. Rather, the Court concluded that any taking could not be enjoined because EPA's use of pre–1970 data was authorized, consideration of the data served a public purpose, and a remedy was available in the Court of Claims. It was left to that Court to determine whether a taking actually was effected. Chevron's due process claim also was rejected.

Among the issues decided by the Court, the authorization for the use of pre–1970 data posed the most difficult question. I

---

1. Rule 62(c) reads in pertinent part:

(c) Injunction Pending Appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. . . . .

noted at page 10 of the June 5 Opinion that "the issue is hardly free from doubt." It is principally upon this basis that Chevron now suggests the appropriateness of an injunction pending appellate review and disposition. Alternatively, Chevron seeks an order enjoining EPA from using Chevron's naled or paraquat data for a period of 30 days, thereby enabling Chevron to petition for relief in the Third Circuit Court of Appeals. EPA, while opposing the broader injunction sought by Chevron, has agreed to the latter alternative, and a stipulation to the effect was approved by the Court on June 25, 1980. (Doc. No. 32).

The now familiar standard governing issuance of the requested relief entails consideration of four factors: (1) the harm to be suffered by Chevron if its request is denied; (2) the probability that Chevron ultimately will succeed on the merits of its appeal; (3) the harm to the defendant or other interested persons if the relief is granted; and (4) the public interest. *See Reserve Mining Co. v. United States,* 498 F.2d 1073, 1076–77 (8th Cir.), *application to vacate stay denied,* 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33 (1974); *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). This Court previously has declined to adopt a literal reading of the second factor in the context of a motion to stay an injunctive order, concluding that to do so would demand a confession of error by the trial court as a prerequisite to relief. *Evans v. Buchanan,* 435 F.Supp. 832, 843–44 (D.Del. 1977).[2] *See also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843–45 (D.C.Cir.1977). In *Evans,* injunctive relief had been ordered after consideration of the merits, and the defendants were seeking a delay in the implementation of that relief pending appellate review. Thus, the Court had imposed duties or obligations on the defendants to which they had not been subject prior to the judgment. In the instant case, after consideration of the merits, the Court has declined to alter EPA's conduct of its affairs. Chevron is not asking that the Court temporarily return the parties to their prelitigation posture, as in *Evans,* but rather that the Court temporarily award Chevron the affirmative relief sought in the litigation. Viewed in that light, the analysis must parallel that employed when considering motions for preliminary injunctions *pendente lite,* for it is illogical to require a lesser showing from Chevron after it has lost on the merits than would be required at the outset of the case.[3]

This conclusion is not fatal to Chevron's prospects, however, since preliminary relief is not contingent upon full satisfaction of each of the four factors, but hinges instead upon a "delicate balancing" of them. *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 920 (3d Cir. 1974). Failure to demonstrate a probability of success with mathematical precision can be overcome by a showing that the other factors strongly favor injunctive relief. *Id.* at 923; *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., supra,* 559 F.2d at 843. Chevron having failed to demonstrate to this Court a probability of success on appeal, the inquiry now must turn to the remaining factors to determine where the balance will be struck.

In support of its claim that it will suffer irreparable injury in the absence of injunctive relief, Chevron asserts that EPA is prepared to issue registrations to several of Chevron's competitors through reliance on Chevron's naled and paraquat test data. Chevron contends that it expended several

---

**2.** Nevertheless, it was cautioned in *Evans* that "This is not to say, however, that every time a case presents difficult questions of law a stay should be entered." 435 F.Supp. at 844.

**3.** EPA stipulated at the commencement of this litigation that it would issue no registrations based upon Chevron's naled or paraquat data while the case was pending before this Court.

That stipulation, of course, expired with the Court's June 5 ruling. Had there been no such stipulation, and had Chevron sought preliminary relief of that nature from the Court, it would have been incumbent upon Chevron to demonstrate, *inter alia,* a probability of eventual success on the merits.

million dollars to produce this data, and that its competitors have not expended similar sums, hoping instead to obtain a "free ride" on the basis of Chevron's data. The threatened use of the data by EPA, Chevron claims, will "destroy" its value.

As noted in the June 5 Opinion, however, EPA's use of the data does not entail disclosure of its contents to Chevron's competitors. EPA merely reexamines the data to assure itself that chemical compounds proved safe and efficacious by Chevron will be equally safe and efficacious if marketed by another entity. The threat to Chevron is not the destruction or disclosure of its trade secrets, but the loss of its exclusive market for naled and paraquat, the patents on which expired in 1978. However, the "mere existence of competition is not irreparable harm, in the absence of substantiation of severe economic impact." *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., supra*, 559 F.2d at 843 n.3. Chevron, on which the burden of demonstrating irreparable harm rests, has indicated generally that a "free ride" would provide a competitive advantage to the other companies applying for registrations, but it has not substantiated a severe economic impact on its operations if these registrations are issued.[4]

As to the third factor, the defendant in this case, EPA, will not suffer substantially if the relief requested by Chevron is granted. A temporary suspension of the issuance of registrations which require reliance on Chevron's naled or paraquat data will affect only a small portion of EPA's pesticide registration program. There are, however, "other interested persons" who will be adversely affected by the issuance of injunctive relief. Several of Chevron's competitors have completed all of the steps necessary for registration of their pesticide products. The harm befalling them should the Court prevent the registration of their pes-

ticides is obvious, notwithstanding Chevron's characterization of their benefitting from the data as a "free ride" or a "windfall." If, as this Court has ruled, Congress has constitutionally provided for registration of their pesticides through EPA's reliance on Chevron's data, then some of Chevron's competitors are entitled to market their products virtually immediately.

This is not to say that the harm suffered by Chevron's competitors if an injunction issued would be greater than the harm Chevron would suffer if injunctive relief were denied.[5] Rather, it appears that regardless of the decision, the injury to one interest would roughly approximate the benefit to the other.

The final factor, the public interest, will not be greatly affected by either the grant or denial of injunctive relief. As noted in the June 5 Opinion, Congress, in permitting EPA consideration of previously submitted data, intended, *inter alia*, to foster competition in the pesticide industry. While a temporary suspension of several pesticide registrations may frustrate that intent to a limited extent, the overall impact on the public interest must be considered on the present record as negligible.

I conclude on balance that the hardship factors do not strongly favor injunctive relief. This conclusion, when coupled with Chevron's inability to demonstrate a probability of success on appeal, warrants a denial of Chevron's request for an injunction pending disposition of its appeal by the Third Circuit Court of Appeals. Accordingly, the June 25, 1980 stipulation approved by the Court shall expire 30 days from the date of this Opinion and Order.

---

4. Chevron also contends that its appeal will be rendered moot if EPA issues registrations to Chevron's competitors by relying on its data. The question of mootness, if it arises at all, is one that will be resolved by the Court of Appeals.

5. The Court has not been provided with record support for the nature or extent of the economic impact on the competitors if their pesticide registrations are delayed temporarily.