**HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION LOCAL 54 and Frank Gerace, President, Plaintiffs,**

and

**Frank Gerace and Frank Materio, Individually, Intervening Plaintiffs,**

v.

Civ. A. No. 81–2630.

United States District Court,
D. New Jersey.

Nov. 26, 1984.

**1452**

Bernard N. Katz, N. Michael Katz, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for Local 54 and President Frank Gerace.

Harry A. Horwitz, Davis, Reberkenny & Abramowitz, P.C., Cherry Hill, N.J., and Ronald F. Kidd, Duane, Morris & Heckscher, Philadelphia, Pa., for Frank Gerace and Frank Materio, individually.

Robert J. Genatt, John R. Zimmerman, Leonard J. DiGiacomo, New Jersey Casino Control Commission Trenton, N.J., for New Jersey Casino Control Com'n.

Irwin I. Kimmelman, Atty. Gen., of New Jersey by Anthony J. Parrillo, Asst. Atty. Gen., Gary A. Ehrlich, Eugene M. Schwartz, Mitchell A. Schwefel, Deputy Attys. Gen., Trenton, N.J., for New Jersey Div. of Gaming Enforcement.

### OPINION ON MOTION FOR INJUNCTIVE RELIEF PENDING APPEAL

BROTMAN, District Judge.

Hotel and Restaurant Employees and Bartenders International Union Local 54 (hereinafter "Local 54"), and its president, Frank Gerace, filed this action seeking an injunction prohibiting enforcement of certain provisions of New Jersey's Casino Control Act, L. 1977, c. 110, ¶ 1 et seq., as amended by L. 1978, c. 7, § 1 et seq., N.J. Stat.Ann. § 5:12–1 et seq. (West Supp.1984) ("the Act") against them. Both plaintiffs alleged that orders issued by the defendant Casino Control Commission ("the Commission") applied section 86(f) of the Act to Frank Gerace and Frank Materio in a manner violative of the Union's rights guaranteed by the First, Fifth and Fourteenth amendments to the United States Constitution. The court granted a motion by Gerace and Materio to intervene as plaintiffs in their individual capacity in order to assert similar claims. Plaintiffs also seek relief in the form of damages and a declaration that section 86(f) is unconstitutional as applied. Plaintiffs have invoked this court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (West Supp.1984).

Plaintiffs sought to enjoin enforcement of the Commission's orders disqualifying the individual plaintiffs from their positions as officers of Local 54 and directing their removal from such posts. The court denied plaintiffs' motion for preliminary injunctive relief on November 5, 1984. In addition, the court stayed further proceedings under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), pending a resolution of underlying issues of state law in the courts of the State of New Jersey. (*See* Opinion and Order, November 5, 1984, 597 F.Supp. 1431).

The matter is currently before the court on the motion of plaintiffs Local 54 and Frank Gerace, as President of Local 54, for a temporary injunction pending appeal, which the court has authority to grant under Rule 62(c), Fed.R.Civ.P. The intervening plaintiffs in their individual capacity have declined to join in this motion. Rule 62(c) reads in part: "When an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms ... as it considers proper for the security of the rights of the adverse party." *Id.* Local 54 and its President

have filed a notice of appeal from the decision of November 5, 1984, purportedly under the provisions of 28 U.S.C. § 1292(a) (West Supp.1984).

On a motion for an injunction authorized by Rule 62, Fed.R.Civ.P., it is well established that the court must evaluate the extent to which the moving party has made a showing as to the following four factors:

(1) the likelihood of the moving party's success on the merits of its appeal;

(2) the likelihood of irreparable injury to the moving party if the injunction is denied;

(3) the extent to which the opposing parties will be harmed if the injunction sought is issued; and

(4) the likelihood that there will be no substantial harm to the public interest if the injunction sought is issued.

*Long v. Robinson,* 432 F.2d 977 (4th Cir. 1970); *Chevron Chemical Co. v. Costle,* 499 F.Supp. 745, 747 (D.Del.1980); *Philadelphia Council of Neighborhood Organizations v. Adams,* 451 F.Supp. 114 (E.D. Pa.1978); *Evans v. Buchanan,* 435 F.Supp. 832 (D.Del.1977); *Resident Advisory Board v. Rizzo,* 429 F.Supp. 222 (E.D.Pa. 1977). Of course, no single factor is controlling, and the court must balance the strength of the plaintiffs' showing on each of these four factors as part of its exercise of discretion in considering the motion. *Chevron Chemical Co. v. Costle,* 499 F.Supp. at 747; *Phila. Council of Neighborhood Organizations, supra,* 451 F.Supp. at 116. The court will discuss each of these four factors below.

## I. Likelihood of Success on the Merits of the Appeal

Plaintiffs' contention that they are likely to succeed on appeal has two components. First, plaintiffs argue that there is no basis for abstention under *Pullman* as to Local 54 and its President. Second, plaintiffs maintain that there is a substantial probability they will prevail on the merits of their First Amendment freedom of association claim.

## A. Pullman Abstention

In its decision of November 5, 1984, the court held that this case presents difficult issues of state law, involving construction of the New Jersey Casino Control Act, which are "amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the constitutional claims" raised by Local 54 and its officers as individuals. Opinion at 1443–1445. As a result, the court stayed further proceedings in this action pending resolution of issues of state law in the state courts of New Jersey, pursuant to the *Pullman* abstention doctrine. Local 54 and the individual plaintiffs posed two constitutional issues which the court declined to reach because of underlying and unresolved state law questions: a First Amendment freedom of association claim asserted by Local 54; and a due process, "void-for-vagueness" cause of action pressed by both Local 54 and its officers as individuals. The two state law issues specifically identified by the court as a basis for abstention are presented in the appeal of the individual plaintiffs before the New Jersey Superior Court, Appellate Division.

With respect to *Pullman* abstention, plaintiffs allege that the court erred "by failing to distinguish between Plaintiff Local 54 and the individual Plaintiff Intervenors as separate and distinct parties individually asserting separate claims on their own behalf." Memorandum in Support of Motion for Injunction Pending Appeal at 3. The gist of Local 54's argument at this stage is that abstention under *Pullman* is impermissible as to the Union and its President because none of the state law claims raised by them in their appeal in state court provides an independent basis for *Pullman* abstention. Plaintiffs' analysis fundamentally misconstrues the *Pullman* doctrine and the reasoning applied in the court's earlier decision.

■ Plaintiffs have mischaracterized the test for application of *Pullman.* The initial prerequisite for *Pullman* abstention is that there be "uncertain issues of state law underlying the federal constitutional claims

brought in federal court." *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3rd Cir.1978); *Hotel and Restaurant Employees and Bartenders International Union Local 54 v. Read*, 597 F.Supp. 1431 at 1443 (D.N.J.1984). *D'Iorio* plainly does not interpret *Pullman* to require, as plaintiffs assert, uncertain state *claims actually raised* in state court.

■ *Pullman* abstention is premised on considerations of comity between the states and the federal government and the avoiding of unnecessary constitutional adjudication. Furtherance of these policies does not demand the existence of ongoing state proceedings to which a federal court can defer; nor does the doctrine require the party objecting to abstention to have raised the unsettled issues of state law in state court. Notwithstanding that the plaintiff had withdrawn an action in state court prior to the filing of his federal complaint, *D'Iorio* found abstention appropriate. 592 F.2d at 684, n. 1. Although no state court proceedings were underway in *Pullman* itself, the Supreme Court remanded the action to the district court and ordered the trial judge to retain jurisdiction "pending a determination of proceedings, to be brought with reasonable promptness, in state court." *Pullman, supra,* 312 U.S. at 501–02, 61 S.Ct. at 645–46.

■ The reading of *Pullman* proposed by plaintiffs is inconsistent with the policies *Pullman* is intended to serve and contrary to interests of judicial economy. The plaintiffs' view would allow parties in federal court to avoid abstention simply by declining to initiate litigation in state court or through artful pleading in papers submitted there. Permitting abstention only as to some plaintiffs, as Local 54 urges, would obligate a federal court to reach "a tentative answer" regarding the statutory authority of a state agency "which might be displaced tomorrow by a state adjudication." *Pullman, supra,* 312 U.S. at 500, 61 S.Ct. at 645. This kind of inconsistent and duplicative litigation of state issues underlying federal constitutional questions would generate "needless friction between federal pronouncements and state policies." *D'Iorio, supra,* 592 F.2d at 685, quoting *Reetz v. Bozanich*, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970).

This court's application of *Pullman* does not deny plaintiffs access to the forum of their choice, as plaintiffs contend. Instead, consistent with well-settled principles *Pullman* obliges the parties raising federal claims to *postpone* review of such issues in federal court until it becomes clear that such adjudication is necessary. *See, e.g., Harrison v. NAACP*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1958). Plaintiffs are not being forced to litigate federal claims in state court; rather, they "must inform those courts what [their] federal claims are, so that the state statute may be construed 'in light of' those claims." *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 420, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964). Plaintiffs are incorrect in asserting that *England* guarantees them a right to "immediate exercise of federal jurisdiction." Reply Memorandum in Support of Injunction Pending Appeal at 3. As set forth in this court's Opinion, *England* provides only a conditional guarantee to litigate federal claims in federal court *after* the completion of state court proceedings *if* parties expressly reserve their right to do so. Opinion at 1441–1442; *D'Iorio, supra,* 592 F.2d at 686, n. 5.

Finally, Local 54 argues that it is entitled to separate review of its federal claims because this court found it to be threatened by an injury distinct from that facing its officers as individuals. For purposes of standing, the court recognized independent harm likely to accrue to the Union, Opinion at 1438; however, in approving the motion to intervene by the individual plaintiffs, the court also ruled that the claims of all the plaintiffs involve common questions of law and fact. *Id.* at 1440–1441. The court believes that the similarity of the issues raised and allegations made by the various plaintiffs also makes *Pullman* abstention proper as to all of them. The two sets of plaintiffs may each assert their own

interests through separate counsel in state court, and if the case returns to federal court, in that forum as well.

Nowhere in its Opinion of November 5, 1984 did the court imply acceptance of the theories advanced by Local 54. The court discussed possible state law grounds for abstention by reviewing state law claims raised by the various plaintiffs in state court for reasons of courtesy and convenience, and in order to give some guidance to state courts which will be handling this case in the future. In light of the discussion above, the court finds that Local 54 is unlikely to prevail on its claim that this court had no basis for abstaining pursuant to *Pullman* as to the Union and its President.[1]

### B. Freedom of Association

■ In arguing that it is likely to succeed on the merits of its First Amendment claim, Local 54 makes assertions previously brought before the court in connection with its motion for a preliminary injunction. The Union contends that its legal position is supported by the trend of relevant federal cases and that the factual basis for the orders the Commission seeks to enforce is faulty.

In its opinion of November 5, 1984, the court found that the Commission's decisions to disqualify and remove the individual plaintiffs are based on "extensive circumstantial evidence" that Nicodemo Scarfo, the reputed head of organized crime in the Philadelphia-South Jersey area, "exercises influence over" Frank Gerace and Frank Materio "in the conduct of union affairs." Opinion at 1446. The court rejected Local 54's contention that the Commission acted solely because of the individual plaintiffs' social contacts with Scarfo. *Id.*

The court concluded that it is improper to disturb the findings of the Commission at this stage as they are "supported by sufficient credible evidence" and subject to review in the state courts of New Jersey. *Id.* at 1446–1447. Accordingly, the court held that Local 54 is unlikely to prevail on its position that the Commission's sanctions against the individual plaintiffs amount to unlawful regulation of the identity of persons with whom labor officials may associate. Plaintiffs make similar claims in support of the instant motion. *See* Brief in Support of Motion for Injunction Pending Appeal at 5.

In light of the Commission's findings, the court previously ruled that federal case law does not support Local 54's claim that the activity of the individual plaintiffs subjected to Commission sanctions is protected by the First Amendment. Decisions which have invalidated regulation of association with criminals have all involved circumstances different from those present in the case at bar. Such cases have concerned facially vague or overbroad statutes or innocent associations. Meanwhile, in the sole case involving facts suggesting non-innocent criminal influence over legalized gambling operations, the court upheld state agency sanctions. *Lewitus v. Colwell,* 479 F.Supp. 439 (D.Md.1979). In its opinion of November 5, 1984, the court ruled that plaintiffs are unlikely to prevail on the merits in this unsettled area of the law. Plaintiffs' most recent submissions and arguments to the court present no grounds for reaching a different conclusion.

### II. Irreparable Injury

Plaintiffs allege that the Union and its membership will suffer irreparable injury

---

**1.** In its Opinion of November 5, 1984, the court inadvertently attributed to defendants a willingness to have the court abstain pursuant to *Pullman* if it declined to do so under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It appears that the Commission did not request *Pullman* abstention, nor did it concede that this action is "state-initiated" for purposes of *Younger* abstention, as suggested by the court at page 1439 of its Opinion. The court hereby amends its Opinion of November 5, 1984 to reflect correctly those contentions of the Casino Control Commission. However, the court notes that these two positions ascribed to defendants accurately presents and continues to present the stance of the defendant Division of Gaming Enforcement. Furthermore, these amendments do not in any way alter the result reached by the court in its earlier opinion.

during the pendency of the appeal because of ongoing violations of their federal constitutional rights and due to a probable decline in the efficiency of Union operations. Plaintiffs concede that the latter injury is likely to be temporary and to cease after a "period of transition." Memorandum in Support of Motion for Injunction Pending Appeal at 7–8.

This court concluded above that plaintiffs are unlikely to prevail in their appeal based on the First Amendment. In effect, the court found that Local 54 is not suffering harm to its constitutional rights. For the same reasons, the court holds such harm is unlikely during the pendency of the appeal.

In the course of its review of plaintiffs' motion for a preliminary injunction, the court conducted an extensive inquiry into the issue of irreparable harm. Counsel had the opportunity to question Frank Gerace and Frank Materio on the possibility of harm to the Union. The court has also considered detailed submissions and arguments of the parties on this issue in connection with both motions for injunctive relief. According to the evidence before the court, the Union will suffer some damage to its functional capacity pending the outcome of its appeal, but such damage is likely to be modest.

Accordingly, the court holds that irreparable injury is unlikely to accrue to the moving parties if the court denies the requested injunction pending appeal.

### III. Public Interest

As the court stated in its opinion of November 5, 1984, "in this case, the questions of potential harm to 'other interested parties' and to the public interest amount to the same inquiry." Opinion at 1450.

Plaintiffs assert that further delay in the enforcement of the Commission's disqualification and removal orders will not be harmful to the public. In making this motion however, Local 54 has presented the court with no grounds to alter its contrary conclusions expressed in its opinion of November 5, 1984. These proceedings have provided ample opportunity for the court to consider conditions in the New Jersey casino gambling industry and the regulatory scheme established by the New Jersey Casino Control Act. *See, e.g., Hotel & Restaurant Employees & Bartenders International Union Local 54 v. Danziger*, 536 F.Supp. 317, 321–24 (D.N.J.1982). The court remains convinced that "postponed enforcement of the Commission's orders has a serious negative effect on public faith in effective regulation of the casino industry." Opinion of November 5, 1984 at 1450. An injunction pending appeal would have a detrimental impact on the effectiveness of such regulation and on the stability of the casino industry itself. Opinion of November 5, 1984 at 1450.

### IV. Conclusion

For the reasons stated above, plaintiffs' motion for an injunction pending appeal will be denied. The court will enter an appropriate order.