780 F.2d 221
 23 ERC 1825, 16 Envtl. L. Rep. 20,284
 TRADE WASTE MANAGEMENT ASSOCIATION, INC.; Dinardi;
Middlesex Carting Co., Inc.; Salvatore Falgiano; Falgi
Carting Co.; Custom Disposal Service Corporation; Steve
DiNardi; Joseph George; DiBella Sanitation, Inc.; Philip
F. DiBella; Dependable Disposal Service, Inc.; Frank
Novello, United Service Disposal Corporation; Andrew
Coviello; Crystal Carting Corporation; Bert Garrabrant;
Fred Strubel; Michael Barletta; Blue and White Disposal,
Inc.; Art Sawyer; Hamlette Disposal, Inc.; Patrick
Hamlette; Giambrone Enterprises, Inc.; Joseph Giambrone;
and Joe Doe (said name being a fictitious name for a real
person who sues on behalf of himself individually and on
behalf of certain persons and classes of persons similarly
situated, Appellees,
v.
Robert E. HUGHEY, Commissioner of the Department of
Environmental Protection of the State of New
Jersey: and Irwin I. Kimmelman,
Attorney General of the State
of New Jersey, Appellants.
 No. 85-5342.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 27, 1985.
Decided Dec. 19, 1985.
Rehearing and Rehearing In Banc Denied Jan. 15, 1986.
 
 Brendan T. Byrne (Argued), Kenneth L. Winters (Argued), Carella, Byrne, Bain & Gilfillan, Roseland, N.J., for appellees.
 Irwin I. Kimmelman, Atty. Gen., Michael R. Cole, First Asst. Atty. Gen., Andrea M. Silkowitz (argued), John A. Covino, Deputy Attys. Gen., Trenton, N.J., for appellants.
 Before GIBBONS, SLOVITER and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 The Commissioner of the New Jersey Department of Environmental Protection and the New Jersey Attorney General appeal from a final judgment declaring Pub.L.1983, ch. 392, N.J.S.A. 13:1E-126 to 13:1E-135 (Supp.1984-1985) (hereinafter referred to as Pub.L.1983, ch. 392), to be null and void as a violation of the United States Constitution, and enjoining them from enforcing it. That statute amended and supplemented the comprehensive statutory scheme under which New Jersey regulates the disposal of solid and hazardous waste. After a final hearing the district court held that some provisions of the statute violated federally guaranteed rights of association and privacy and that those provisions were not severable from the rest of the statute. Consequently, the district court concluded that the entire statute was void. We reverse.
 
 I.
 The Legislative Background
 
 2
 New Jersey has a long, and almost unique, history of regulating the solid and hazardous waste industries as public utilities. As early as 1958 the New Jersey Attorney General's Office and several grand juries investigated the relationship between an organization called the Municipal Contractors Association and a labor organization representing employees in the garbage collection industry. These organizations were alleged to be limiting access to the business of collecting and disposing of solid waste. A report reflecting the investigation by the Attorney General's Office, dated May 12, 1959, was made public on May 17, 1959. Presentments on the subject were handed down by a Bergen County grand jury on March 21, 1958 and by a Union County grand jury on May 28, 1958. Although a New Jersey Senate committee investigated the allegations in the report and presentments, no legislation resulted at that time. A decade later the State Commission of Investigation conducted an inquiry entitled "In the Matter of the Investigation of Waste Disposal and the Garbage Industry in New Jersey." That inquiry was prompted by allegations of various forms of intimidation of garbage collectors to enforce anticompetitive practices, allegations that landfill owners who were also in the collection business were using their ownership of the landfill sites to gain competitive advantage over other collectors, and allegations that multiple municipal licensing requirements put some collectors at a competitive disadvantage. The Report of the State Commission on Investigation, dated October 7, 1969, made several recommendations to the legislature that resulted in a regulatory scheme enacted in 1970. See Pub.L.1970, chs. 39, 40 (codified as amended N.J.S.A. 13:1E-1 to 13:1E-135 (Supp.1984-1985) and N.J.S.A. 48:13A-1 to 48:13A-13 (Supp.1984-1985)).
 
 
 3
 In October 1980 an indictment was returned by a state grand jury against New Jersey Trade Waste Association,[1] charging that unlawful efforts were made to insulate particular commercial, industrial, or residential scavenger accounts from competition in violation of the New Jersey Antitrust Act, N.J.S.A. 56:9-1 to 56:9-19 (Supp.1984-1985).[2] Before the trial on that indictment took place, a joint task force of the Department of Law and Public Safety (headed by the Attorney General), the Department of Environmental Protection, and the Board of Public Utilities studied the waste disposal industry and filed a report. That report described the structure of the industry, the increasing complexity of environmental regulations applicable to it, the decreasing availability of landfill sites, and the deficiencies in the existing regulatory structure. The report noted proposed legislation that would prevent organized crime from having ownership interests in the industry--a recurring concern in New Jersey for almost a quarter century. The report recommended legislative changes, and those recommendations provided the general framework for the legislation challenged in this action.
 
 II.
 The New Jersey Statutory Scheme
 
 4
 In the Solid Waste Management Act of 1970, Pub.L.1970, ch. 39 (codified as amended N.J.S.A. 13:1E-1 to 13:1E-135 (Supp.1984-1985)), New Jersey undertook to regulate the disposition of solid waste in that state. A central feature of that Act is the requirement that solid waste collection and disposal facilities and operations be registered with the Department of Environmental Protection. See N.J.S.A. 13:1E-4. Registrations may be revoked by the Department if such facilities or operations are not in compliance with state environmental protection laws and regulations. See N.J.S.A. 13:1E-12. Simultaneously, in the Solid Waste Utility Control Act of 1970, N.J.S.A. 48:13A-1 to 48:13A-13 (Supp.1984-1985), New Jersey determined that "the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest," the economic aspects of which should be regulated as a public utility by the New Jersey Public Utility Commission. See N.J.S.A. 48:13A-2. A central feature of the Solid Waste Utility Control Act is that no person may engage in the business of solid waste collection or disposal until found by the Board of Public Utility Commissioners to be "qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of convenience and necessity ...." N.J.S.A. 48:13A-6. Thus, the New Jersey statutory scheme, since 1970, has treated solid waste collection and disposal as an environmentally sensitive public utility, the environmental aspects of which are regulated by the Department of Environmental Protection and the economic aspects of which are regulated by the Public Utility Commission. Both the Solid Waste Management Act of 1970 and the Solid Waste Utility Control Act of 1970 were amended in 1975 to increase the regulatory authority of the Department of Environmental Protection and the Public Utility Commission, in manners not challenged in the instant case. See Pub.L.1975, ch. 326. In 1981 the Solid Waste Management Act of 1970 was further amended and supplemented. See Pub.L.1981, chs. 278, 279. Chapter 278 of the 1981 amendment imposed a recycling tax for every cubic yard of solid waste accepted for disposal at a facility to fund the State Recycling Fund. See N.J.S.A. 13:1E-95, 13:1E-96. Chapter 279, entitled the "Major Hazardous Waste Facilities Siting Act," contains a legislative finding that hazardous waste disposal has been made "on an indiscriminate and illegal basis...." N.J.S.A. 13A:1E-50. To monitor the disposal of hazardous waste, Chapter 279 requires special registration and approval for hazardous waste facilities. See N.J.S.A. 13:1E-60. The Department of Environmental Protection was required to review all applications, and that review included consideration of a disclosure statement as well as an investigation report by the Attorney General based on that disclosure statement. See N.J.S.A. 13:1E-60(b). Approval of such a registration could not be granted unless
 
 
 5
 [t]he applicant, in its prior performance record in the treatment, storage or disposal of hazardous waste, exhibits sufficient reliability, expertise, and competency to operate a major hazardous waste facility given the potential harm to human health and the environment which would result from the irresponsible operation of the proposed facility. In no case may approval be granted to the applicant if any person shown to be a party to the application by the disclosure statement [required by the Act] has been convicted of a crime for any act or omission related to the collection, treatment, storage or disposal of hazardous waste in this or any other jurisdiction within 10 years of the date on which the application was filed.
 
 
 6
 N.J.S.A. 13:1E-60(b)(1) (deleted by amendment Pub.L.1983, ch. 392). The disclosure statement required of an applicant for a hazardous waste treatment registration by Chapter 279 was to include:
 
 
 7
 (1) The names and addresses of all officers, directors, or partners of the business concern seeking a registration and engineering design approval and all persons or business concerns holding more than 10% of the equity in or debt liability of that business concern;
 
 
 8
 (2) The names and addresses of all officers, directors, or partners of any business concern disclosed in the statement and the names and addresses of all persons holding more than 10% of the equity in or the debt liability of any business concern so disclosed;
 
 
 9
 (3) The name and address of any company which collects, treats, stores or disposes of hazardous waste in which the business concern seeking a registration and engineering design approval holds an equity interest;
 
 
 10
 (4) A description of the experience and credentials in, including any past or present licenses for, the collection, treatment, storage or disposal of hazardous waste possessed by the key employees, officers, directors, or partners of the business concern seeking a registration and engineering design approval;
 
 
 11
 (5) A listing and explanation of any notices, administrative orders or license revocations issued by any state or federal authority since January 1, 1976 which indicate a violation of any law or rule and regulation relating to the collection, treatment, storage or disposal of hazardous waste by the business concern seeking a registration and engineering design approval or by any key employee, officer, director, or partner thereof;
 
 
 12
 (6) A listing and explanation of any judgment of liability or conviction which was rendered, pursuant to any state or federal statute or local ordinance concerning the collection, treatment, storage or disposal of hazardous waste, against the business concern seeking a registration and engineering design approval or against any key employee, officer, director, or partner thereof; and
 
 
 13
 (7) Any other information the Department may require that relates to the competency or reliability of the applicant.
 
 
 14
 N.J.S.A. 13:1E-51h (deleted by amendment Pub.L.1983, ch. 392).
 
 
 15
 While the quoted 1981 disclosure amendments dealt only with registration of facilities for disposal of hazardous waste, the 1983 legislation challenged in this lawsuit deals comprehensively with disclosure requirements both for hazardous waste facilities applications and for solid waste collection and disposal facilities. In addition, it differs from the 1981 amendment in several other significant respects.
 
 A. Disqualifying Criteria
 
 16
 (1) Criminal convictions
 
 
 17
 First, while the 1981 amendment prohibited approval of registration if a person listed in the disclosure statement had been convicted of a crime relating to storage or disposal of hazardous waste within 10 years, the disqualification criteria for criminal convictions in the 1983 amendment are far broader:
 
 
 18
 The provisions of any law to the contrary notwithstanding, no license shall be approved by the department:
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 b. If any person required to be listed in the disclosure statement, or shown to have a beneficial interest in the business of the applicant or the licensee other than an equity interest or debt liability by the investigation thereof, has been convicted of any of the following crimes under the laws of New Jersey or the equivalent thereof under the laws of any other jurisdiction:
 
 
 22
 (1) Murder;
 
 
 23
 (2) Kidnapping;
 
 
 24
 (3) Gambling;
 
 
 25
 (4) Robbery;
 
 
 26
 (5) Bribery;
 
 
 27
 (6) Extortion;
 
 
 28
 (7) Criminal usury;
 
 
 29
 (8) Arson;
 
 
 30
 (9) Burglary;
 
 
 31
 (10) Theft and related crimes;
 
 
 32
 (11) Forgery and fraudulent practices;
 
 
 33
 (12) Fraud in the offering, sale or purchase of securities;
 
 
 34
 (13) Alteration of motor vehicle identification numbers;
 
 
 35
 (14) Unlawful manufacture, purchase, use of transfer of firearms;(15) Unlawful possession or use of destructive devices or explosives;
 
 
 36
 (16) Violation of section 19 of the "New Jersey Controlled Dangerous Substances Act," P.L.1970, c. 226 (C. 24:21:19), except possession of 84 grams or less of marijuana;
 
 
 37
 (17) Racketeering, P.L.1981, c. 167 (C. 2C:41-1 et seq.);
 
 
 38
 (18) Violation of criminal provisions of the "New Jersey Antitrust Act," P.L.1970, c. 73 (C. 56:9-1 et seq.);
 
 
 39
 (19) Any purposeful or reckless violation of the criminal provisions of any federal or state environmental protection laws, rules, or regulations;
 
 
 40
 (20) Violation of N.J.S. 2C-17-2;
 
 
 41
 (21) Any offense specified in chapter 28 of N.J.S. 2C; or
 
 
 42
 (22) Violation of the "Solid Waste Utility Control Act," P.L.1970, c. 40 and P.L.1981, c. 211 (C. 48:13A-1 et seq.).
 
 
 43
 N.J.S.A. 13:1E-133(b). As can be readily seen, most of the listed offenses are unrelated to the hazardous waste or solid waste disposal business. The Act also requires the withholding of a license, if any person listed in the disclosure statement has pending charges, in any jurisdiction, of any of the crimes listed in section 133(b). N.J.S.A. 13:1E-133(d).
 
 
 44
 Moreover, in contrast with the 1981 amendment, the 1983 amendment omits the 10 year cut off on disqualifying convictions. In place of that cut off the 1983 amendment provides,
 
 
 45
 Notwithstanding the provisions of this subsection, no applicant shall be denied a license on the basis of a conviction of any individual required to be listed in the disclosure statement or shown to have a beneficial interest in the business of the applicant or the licensee other than an equity interest or debt liability by the investigation thereof for any of the offenses enumerated in this subsection as disqualification criteria, provided that the person has affirmatively demonstrated by clear and convincing evidence his rehabilitation. In determining whether an applicant has affirmatively demonstrated rehabilitation, the department shall request recommendation thereon from the Attorney General, and shall consider the following factors:
 
 
 46
 (1) The nature and responsibility of the position which a convicted individual would hold;
 
 
 47
 (2) The nature and seriousness of the offense;
 
 
 48
 (3) The circumstances under which the offense occurred;
 
 
 49
 (4) The date of the offense;
 
 
 50
 (5) The age of the applicant when the offense was committed;
 
 
 51
 (6) Whether the offense was an isolated or repeated incident;
 
 
 52
 (7) Any social conditions which may have contributed to the offense;
 
 
 53
 (8) Any evidence of rehabilitation, including good conduct in prison or in the community, counselling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision.
 
 
 54
 N.J.S.A. 13:1E-133(b). Thus, conviction of one of the disqualifying offenses results in permanent disbarment from the industry unless the applicant can establish rehabilitation by clear and convincing evidence.
 
 
 55
 (2) Bad reputation
 
 A license may also be denied
 
 56
 (c) If the Attorney General determines that there is a reasonable suspicion to believe that a person required to be listed in the disclosure statement, or shown to have a beneficial interest in the business of the applicant or the licensee other than an equity interest or debt liability by the investigation thereof, does not possess a reputation for good character, honesty and integrity, and that person or the applicant fails, by clear and convincing evidence, to establish his reputation for good character, honesty and integrity.
 
 
 57
 N.J.S.A. 13:1E-133(c). Accordingly, if the Attorney General has reasonable suspicion concerning the reputation of anyone listed in the disclosure statement, the statute places the burden on that person or the applicant to establish such good reputation by clear and convincing evidence.
 
 
 58
 (3) Pursuit of antisocial activities
 
 A license must also be denied
 
 59
 (e) If any person required to be listed in the disclosure statement or shown to have a beneficial interest in the business of the applicant or the licensee other than an equity interest or debt liability by the investigation thereof has pursued economic gain in an occupational manner or context which is in violation of the criminal or civil public policies of this State, where such pursuit creates a reasonable belief that the participation of that person in any activity required to be licensed under this act would be inimical to the policies of this act. For purposes of this section, "occupational manner or context" means the systematic planning, administration, management, or execution of an activity for financial gain.
 
 
 60
 N.J.S.A. 13:1E-133(e). What this model of obscurant draftsmanship means is not entirely clear. At best we can tell, it requires disqualification for activities for gain deemed by the Department of Environmental Protection to be antisocial.
 
 B. Required Disclosure
 
 61
 The 1983 amendment also goes further than the 1981 amendment in requiring disclosure in connection with a license application. Under the 1983 amendment disclosure statements must include:
 
 
 62
 (1) The full name, business address and social security number of the applicant, or, if the applicant is a business concern, of any officers, directors, partners, or key employees thereof and all persons or business concerns holding any equity in or debt liability of that business concern, or, if the business concern is a publicly traded corporation, all persons or business concerns holding more than 5% of the equity in or debt liability of that business concern, except that where the debt liability is held by a chartered lending institution, the applicant need only supply the name and business address of the lending institution;
 
 
 63
 (2) The full name, business address and social security number of all officers, directors, or partners of any business concern disclosed in the statement and the names and addresses of all persons holding any equity in or debt liability of any business concern so disclosed, or, if the business concern is a publicly traded corporation, all persons or business concerns holding more than 5% of the equity in or debt liability of that business concern, except that where the debt liability is held by a chartered lending institution, the applicant need only supply the name and business address of the lending institution;
 
 
 64
 (3) The full name and business address of any company which collects, transports, treats, stores or disposes of solid waste or hazardous waste in which the applicant holds an equity interest;
 
 
 65
 (4) A description of the experience and credentials in, including any past or present licenses for, the collection, transportation, treatment, storage or disposal of solid waste or hazardous waste possessed by the applicant, or, if the applicant is a business concern, by the key employees, officers, directors, or partners thereof;
 
 
 66
 (5) A listing and explanation of any notices of violation or prosecution, administrative orders or license revocations issued by any State or federal authority, in the 10 years immediately preceding the filing of the application, which are pending or have resulted in a finding or a settlement of a violation of any law or rule and regulation relating to the collection, transportation, treatment, storage or disposal of solid waste or hazardous waste by the applicant, or if the applicant is a business concern, by any key employee, officer, director, or partner thereof;(6) A listing and explanation of any judgment of liability or conviction which was rendered, pursuant to any State or federal statute or local ordinance, against the applicant, or, if the applicant is a business concern, against any key employee, officer, director, or partner thereof, except for any violation of Title 39 of the Revised Statutes;
 
 
 67
 (7) A listing of all labor unions and trade and business associations in which the applicant was a member or with which the applicant had a collective bargaining agreement during the 10 years preceding the date of the filing of the application;
 
 
 68
 (8) A listing of any agencies outside of New Jersey which had regulatory responsibility over the applicant in connection with his collection, transportation, treatment, storage or disposal of solid waste or hazardous waste;
 
 
 69
 (9) Any other information the Attorney General or the department may require that relates to the competency, reliability or good character of the applicant.
 
 
 70
 N.J.S.A. 13:1E-127(e). Items (1) through (6) and item (9) roughly parallel the disclosures required by the 1981 amendment. Item (7), requiring the disclosure of all labor unions with which the applicant has had a collective bargaining relationship and of all business associations of which the applicant has been a member, and item (8), requiring a listing of regulatory agencies outside New Jersey to which the applicant is responsible, are matters not dealt with in the 1981 statute. The Department has by regulation embellished the disclosure requirements of the 1983 amendment, to require in addition:
 
 
 71
 9. A listing of all persons employed by the applicant in its solid or hazardous waste operations in New Jersey and not otherwise required to be listed, and as to each, the full name, home address, date of birth and social security number;
 
 
 72
 10. As to every person required to be listed in the disclosure statement (other than a holder of a debt liability or non-supervisory employee required to be listed under N.J.A.C. 7:26-16.4(a)9), a completed Personal History Disclosure Form on forms supplied by the Department, including information about family, education and employment history.
 
 
 73
 N.J.A.C. 7:26-16.4(a)9, 10. Hence, while some information about every employee must be disclosed, only supervisory employees, managers, and owners must file Personal History Disclosure Forms.
 
 C. Investigation
 
 74
 The purpose of the disclosure statements is to facilitate investigation into the qualification of prospective licensees and license holders. The 1983 amendment requires that the disclosure statement be filed with both the Department of Environmental Protection and the Attorney General. N.J.S.A. 13:1E-128b(1). Within 120 days of receipt of the disclosure statement the Attorney General must prepare and transmit to the Department of Environmental Protection an investigative report on the applicant. N.J.S.A. 13:1E-128b(3). Persons required to be listed in the disclosure statement must submit to fingerprinting for identification and investigation. N.J.S.A. 13:1E-128b(2). Applicants have a continuing duty to cooperate in the Attorney General's investigation and in any hearing conducted by the Department of Environmental Protection and to update disclosure statements. N.J.S.A. 13:1E-128c, e. Failure to furnish requested information is a ground for denial or revocation of a license. N.J.S.A. 13:1E-128c.
 
 
 75
 The Attorney General is also given broad power to serve investigative interrogatories, not only upon applicants, but upon "any person" as to whom he has a "reasonable suspicion" that the person "may have information or be in possession, custody, or control of any documentary materials relevant to an investigation...." N.J.S.A. 13:1E-129a. The Superior Court of New Jersey is authorized to compel compliance with investigative interrogatories. N.J.S.A. 13:1E-129i. The Attorney General has subpoena powers. N.J.S.A. 13:1E-130. The statute contains a grant of immunity from prosecution for compelled disclosures that would otherwise violate the privilege against self incrimination. N.J.S.A. 13:1E-132(a).
 
 
 76
 An affidavit by a lieutenant of the New Jersey State Police who heads the "Solid/Hazardous Waste Background Investigation Unit," filed on behalf of the defendants, discloses that 461 investigations had been commenced, and 398 were still in progress when the district court handed down its decision enjoining such investigations.
 
 D. Confidentiality
 
 77
 Disclosure of information obtained in investigative interrogatories or by subpoena, except in proceedings involving a violation of the Act or as directed by the Attorney General, is a crime. N.J.S.A. 13:1E-131. There is no statutory prohibition against disclosure of the contents of disclosure statements. The Department of Environmental Protection has, however, adopted a confidentiality regulation. The regulation defines confidential information as:
 
 
 78
 i. Any information required to be furnished to the Department or the Attorney General by an applicant, licensee or an individual required to be listed on a disclosure statement, which pertains to private financial matters of the applicant, licensee or individual which are not otherwise subject to public disclosure by any statute or regulation;
 
 
 79
 ii. Any information which pertains to the criminal record, family or personal background of an applicant, a licensee or an individual required to be listed on a disclosure statement;
 
 
 80
 iii. Any information obtained by the Department or the Attorney General pursuant to an interrogatory issued pursuant to N.J.S.A. 13:1E-129 or a subpoena issued pursuant to N.J.S.A. 13:1E-130; and
 
 
 81
 iv. Any other information which is confidential pursuant to applicable statutory provision, judicial decision or rule of court.
 
 
 82
 N.J.A.C. 7:26-16.14(a)(2). The regulations provide for secure custody of such information. N.J.A.C. 7:26-16.14(a)(3). Such information may not be disclosed except
 
 
 83
 1. Upon lawful order of a court of competent jurisdiction; or
 
 
 84
 2. In the course of the necessary administration of N.J.S.A. 13:1E-126 et seq.; or
 
 
 85
 3. With the approval of the Attorney General, to a duly authorized law enforcement agency; or
 
 
 86
 4. Upon presentation of proper identification, to the applicant, licensee or individual who furnished the confidential information to the Department or the Attorney General; or
 
 
 87
 5. Upon presentation of a duly executed and notarized release authorization by the applicant, licensee or individual who furnished the confidential information, to any person making a written request for specifically identified confidential information.
 
 
 88
 N.J.A.C. 7:26-16.14(k). Knowing or willful disclosure in violation of the regulation is a violation of the Department's Code of Ethics that may subject the violator to disciplinary action including suspension or dismissal. See N.J.A.C. 7:26-16.14(n).
 
 III.
 The Complaint
 
 89
 The plaintiffs are a trade association (members of which are required under the challenged legislation to file disclosure statements), several firms engaged in the collection and transportation of solid waste in New Jersey, and several officers, directors, and key employees of such firms about whom disclosures must be made. They sue individually and on behalf of all businesses that are required to file disclosure statements and all persons about whom disclosure must be made. Plaintiffs brought this suit prior to the period in which they would have had to renew their licenses and, therefore, they have yet to be subject to a licensing investigation. Consequently, the parties have agreed that there are no genuine issue of material facts that are applicable to the determination of whether Pub.L.1983, ch. 392 is facially unconstitutional. The complaint alleges that the disclosure, investigation, and fingerprinting provisions of the law violate their federal constitutional rights of privacy and freedom of association and will have a chilling effect upon their right to freedom of speech. They also allege that the law deprives them of liberty and property without due process of law. Finally they allege that the law violates Article I, paragraphs 1 and 6 of the New Jersey Constitution.
 
 IV.
 The District Court Decision
 
 90
 The district court held that Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), precluded consideration by a federal court of plaintiffs' claim that Pub.L.1983, ch. 392 violates the New Jersey Constitution. Addressing the state's power to address a perceived problem of criminal infiltration of the waste collection and disposal business, the court concluded that there was a rational basis for the legislature's perception. Applying the standard of review announced in Williamson v. Lee Optical Inc., 348 U.S. 483, 487-88, 75 S.Ct. 461, 464-65, 99 L.Ed. 563 (1955), the court held that it could not substitute its judgment for that of the legislature in singling out the solid waste industry for stringent regulation.[3]
 
 
 91
 The court concluded, however, that the means chosen by the state for regulation of the waste industry must still meet federal constitutional requirements. Focusing on the automatic disqualification in N.J.S.A. 13:1E-133(b), which provides for disqualification of an applicant if a person required to be listed in a disclosure statement has a criminal record, the court held that the provision was overly broad. The court reached this conclusion, despite its recognition that N.J.S.A. 13:1E-133(b) was arguably related to a compelling state interest--protection of the waste collection and disposal businesses from infiltration by organized crime. The provision was overly broad, the court reasoned, because its relationship to the identified state's interest was not substantial and because it was not the least intrusive means upon constitutionally protected rights of association and speech. In the court's view the automatic disqualification provision in N.J.S.A. 13:1E-133(b) established an impermissible type of guilt by association, and the rehabilitation portion of the provision was insufficient to save the disqualification provision. Thus, the court reasoned that "[t]he detrimental chilling effect that the disqualification provisions of [section 133(b) ] will have on individual associations is not cured by giving those persons the opportunity to attempt to prove their rehabilitation and thereby the legitimacy of their relationship with the applicant or licensee." Trade Waste Management Association, Inc. v. Hughey, No. 85-458, slip op. at 11 (D.N.J. April 3, 1985), reprinted in Joint Appendix 189.
 
 
 92
 Having concluded that N.J.S.A. 13:1E-133(b) was unconstitutional, the court did not specifically address any other provisions of the statute or any constitutional challenge other than that based on first amendment associational rights. Rather the court simply declared the entire statute unconstitutional, enjoined enforcement of the disclosure statement requirement, the fingerprinting requirement, investigations by the Attorney General, and denials or refusals of licenses, except as authorized by some other New Jersey statute.
 
 V.
 Discussion
 
 93
 Although the district court addressed only the associational rights claim and only the constitutionality of the provision for disqualification based on a criminal record, the plaintiffs urge their remaining constitutional grounds, and their objections to other features of Pub.L.1983, ch. 392, as separate grounds for affirmance. Both parties agree that there are no disputed issues of material fact and that the factual allegations in the complaint may be accepted as true. Thus, both sides agree that our review of the facial validity of Pub.L.1983, ch. 392 is plenary.
 
 A. Severability
 
 94
 The district court opinion did not address whether section 133(b) could have been severed from the balance of Pub.L.1983, ch. 392.[4] Severability is, with limited exceptions, an issue of state law. See, e.g., Fox Film Corp. v. Muller, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935). Under New Jersey law the question of severability of a statute is one of legislative intent. Inganamort v. Borough of Fort Lee, 72 N.J. 412, 422, 371 A.2d 34 (1977); Affiliated Distillers Brands Corp. v. Sills, 60 N.J. 342, 289 A.2d 257 (1972). The presence or absence of a severability clause in a statute is not dispositive. However, a New Jersey statute of general application provides,
 
 
 95
 If any title, subtitle, chapter, article or section of the Revised Statutes, or of any statute or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.
 
 
 96
 N.J.S.A. 1:1-10. Accordingly, in each case it is necessary to determine whether, assuming one section of a statute is invalid, the legislature nevertheless would have enacted the remaining parts. See Group Health Insurance v. Howell, 40 N.J. 436, 193 A.2d 103 (1963), supplemented, 43 N.J. 104, 202 A.2d 689 (1964). The presumption is that severability was intended so long as objectionable features can be excised without substantial impairment of the principal legislative objective. State v. Lanza, 27 N.J. 516, 527-28, 143 A.2d 571 (1958), appeal dismissed, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959).
 
 
 97
 In this instance the New Jersey Legislature articulated its legislative objective, stating "[t]hat the solid and hazardous waste industries in New Jersey can attain, maintain, and retain integrity, public confidence, and trust, and promote the general public interest, only under a system of control and regulation that precludes the participation therein of persons with known criminal records, habits, or associations...." N.J.S.A. 13:1E-126. Plainly, therefore, the legislature intended that those valid provisions of the statute that would advance its articulated objective ought to continue in operation even if some other provisions are deemed to be invalid. Thus the district court's naked conclusion that the entire statute falls if section 133(b) is invalid is inconsistent with the analysis of severability required by New Jersey law.
 
 
 98
 We recognize that in first amendment contexts statutory prohibitions on free speech have as a matter of federal law been struck down on the basis of overbreadth; that is, on the basis that even though the state could validly prohibit the conduct in which the party relying on the speech clause engaged, the reach of the statute is so broad as to embrace protected speech, and thus cannot be enforced at all. Compare Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) with Broadrick v. Oklahoma, 413 U.S. 601, 610-16, 93 S.Ct. 2908, 2914-18, 37 L.Ed.2d 830 (1973). These overbreadth cases, however, are exceptions to the general rule that severability is a question of legislative intention. The overbreadth cases are predicated on a narrow federal policy that permits the vindication of first amendment interests by parties who in other contexts arguably would not have standing to sue. No overbreadth case has been called to our attention in which the state law of severability has been disregarded with respect to an entire legislative scheme merely because one specific provision might, as applied to some persons, violate the first amendment. Indeed we have been admonished by the Supreme Court that
 
 
 99
 [i]n exercising its power to review the constitutionality of a legislative act, a federal court should act cautiously. A ruling of unconstitutionality frustrates the intent of the elected representatives of the people. Therefore, a court should refrain from invalidating more of the statute than is necessary.
 
 
 100
 Regan v. Time, Inc., 468 U.S. 641, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). Thus we approach the task of determining the constitutionality of the challenged provisions of Pub.L.1983, ch. 392 on the assumption that the merits of each such provision must be separately determined. Only if so many of them are invalid as to frustrate the overall objective of the New Jersey Legislature may the statute as a whole be invalidated. See Lipp v. Morris, 579 F.2d 834, 836 (3d Cir.1978) (per curiam).
 
 
 101
 B. The State's Construction of the Disqualification Provision
 
 
 102
 The plaintiffs contend that because by regulation, N.J.A.C. 7:26-16.4(a)(9), the state requires that every employee of a licensee be listed in the disclosure statement, disqualification can occur if any employee has a criminal record, a pending criminal charge, a reputation for bad character, honesty, or integrity, or has pursued an antisocial occupation. Although the district court opinion is not entirely clear on this question, it appears that the court accepted the plaintiffs' construction. The court observed that the statute "sweeps indiscriminately across all types of associations an applicant or licensee might maintain, without regard to the quality or degree of those associations and without any need to establish that a particular association poses the threat feared by the state...." Trade Waste Management, No. 85-458, slip op. at 8-9, reprinted in Joint Appendix 186-87.
 
 
 103
 The State's construction of the disqualification provision is much narrower. It contends that the disclosure requirements are broader than the disqualification provisions. Although N.J.S.A. 13:1E-133(b) refers to "any person required to be listed in the disclosure statement" the state has construed the section to apply to "owners, stockholders, officers, directors, partners, key employees and holders of debt liability." See State of New Jersey Department of Environmental Protection, Division of Waste Management, Personal History Disclosure Form, Appendix A, reprinted in Joint Appendix 55. It has construed the additional section 133(b) category, persons "shown to have a beneficial interest" to include persons having "an informal interest that may not show up on a disclosure statement--such as a regular cash payment from company funds." Id. That construction, the state contends, is consistent with the first two categories of disclosure, required by N.J.S.A. 13:1E-127(e)(1) and (2), and the key employee definition in N.J.S.A. 13:1E-127(f).
 
 
 104
 While the plaintiffs' proposed construction of section 133(b) is certainly plausible, no good reason has been suggested to us for rejecting the equally plausible construction offered by the state agencies charged with responsibility for its enforcement. We must, therefore, be guided by the "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong...." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). The plaintiffs urge that in the future they may be subjected to a more expansive interpretation of section 133(b). We question whether, when the responsible officers of the state, in defending this lawsuit, tender a narrow construction of the statute, on which this court relies in reaching a decision, they would be free in another proceeding to rely upon a different and broader construction. See, e.g., United States v. Mendoza, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); see also Otherson v. Department of Justice, 711 F.2d 267, 274-75 (D.C.Cir.1983). But in any event, the plaintiffs are not entitled to declaratory or injunctive relief with respect to a construction of a statute that the defendants, neither before the lawsuit nor in it, have asserted.
 
 
 105
 Thus, for purposes of our analysis we assume that the disqualification criteria of section 133(b) apply only with respect to owners, stockholders, officers, directors, partners, key employees, holders of debt liability, and persons having a beneficial interest that results in the payment of company funds to them. The question then is whether section 133(b), so construed, and the other challenged provisions of the statute are valid.
 
 C. N.J.S.A. 13:1E-133(a) is Facially Valid
 
 106
 One disqualifying criteria in the statute is unquestionably facially valid. That is the provision that no license shall be approved
 
 
 107
 [u]nless the department finds that the applicant, in any prior performance record in the collection, transportation, treatment, storage or disposal of solid waste or hazardous waste, has exhibited sufficient reliability, expertise, and competency to operate the solid waste or hazardous waste facility, given the potential for harm to human health and the environment which could result from the irresponsible operation thereof, or if no prior record exists, that the applicant is likely to exhibit that reliability, expertise and competence....
 
 
 108
 N.J.S.A. 13:1E-133(a). Indeed the plaintiffs do not contend that a finding that section 133(a) has not been satisfied should not result in disqualification. No challenge is made to the decision of the New Jersey Legislature that the collection and disposal of solid and hazardous waste is a business vitally affecting the public interest, both economically and from the viewpoint of public health and the environment. Standards of demonstrated capacity are not strangers to the law of public utility regulation. See, e.g., N.J.S.A. 48:10-5 (1969) (regulating pipe line utilities); N.J.S.A. 40:52-1 (Supp.1984-1985) (empowering municipalities and counties to license); N.J.S.A. 6:1-44 (Supp.1984-1985) (licensing of airports).
 
 D. Privacy Rights
 
 109
 Our conclusion that N.J.S.A. 13:1E-133(a) is facially valid provides a reference point for the consideration of plaintiffs' challenges to the provisions in Pub.L.1983, ch. 392 authorizing the Attorney General to conduct investigations and make reports. The plaintiffs allege that the fingerprinting requirement, N.J.S.A. 13:1E-128b(2), the provision authorizing the Attorney General to request and receive criminal justice information from the Federal Bureau of Investigation, N.J.S.A. 13:1E-128b(3), and the use of disclosure statements in conducting investigations violate a right of privacy guaranteed by the federal constitution.
 
 
 110
 The Supreme Court has recognized that unspecified provisions of the federal constitution protect a zone of individual privacy with respect to two interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence [from governmental intrusion] in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (footnotes omitted). Accord United States v. Westinghouse Electric Corp., 638 F.2d 570, 577 (3d Cir.1980). The second category--independence in matters relating to private conduct such as marriage, procreation, contraception, family relationships, and child-rearing--is not involved in the investigative features of Pub.L.1983, ch. 392. The waste disposal business, although described by the plaintiffs as in many instances a "family business" or a "mom and pop operation," is nevertheless a business conducted in public. It necessarily involves relationships outside any zone of private personal or familial autonomy that has been recognized by the Court. Persons desiring to engage in that business, therefore, simply cannot assert that they should be free from governmental intrusion into the manner in which that business is conducted. Thus, if any category of federally protected privacy interest is involved, it appears to be the first--avoidance of the disclosure of personal matters. See Westinghouse Electric Corp., 638 F.2d at 577.
 
 
 111
 One personal matter that has been recognized as protected from random governmental disclosure is personal medical history. See Whalen v. Roe, 429 U.S. at 600-02, 97 S.Ct. at 876-78; Westinghouse Electric Corp., 638 F.2d at 578. The disclosures required by Pub.L.1983, ch. 392, or which are likely to be made as a result of the exercise of the Attorney General's interrogatory and subpoena powers under that Act, are in no way analogous. The disclosures most vociferously objected to are records of criminal conviction and pending criminal charges. These matters are by definition public. While it may be that when conduct resulting in the convictions or charges was engaged in the person who engaged in it expected that such participation would remain secret, that expectation was never reinforced by the law. Nor can we identify any federally protected privacy interest that would be violated by the Attorney General's resort to criminal justice information available, as a matter of federal statutory law, from the Federal Bureau of Investigation.
 
 
 112
 The fingerprinting requirement is more personally intrusive, but it can hardly be said to involve a violation of a privacy interest protected by the federal constitution. Involuntary fingerprinting in connection with the investigation of crime has been established to fall outside the protection of the fourth amendment. See Hayes v. Florida, --- U.S. ----, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985); Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973) (dicta); Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969). The fingerprinting requirement in N.J.S.A. 13:1E-128b(2) is not involuntary in the fourth amendment sense. It is required only as a condition for obtaining or keeping a license to engage in a business that the state may license. It is, moreover, rationally related to the investigation of the qualifications of licensees.
 
 
 113
 We note, moreover, that even when information has been recognized to be private rather than public, constitutional protection against disclosure is not absolute. The Government may compel disclosure if its interest in such disclosure outweighs the individual's privacy interest. See, e.g., Nixon v. Administrator of General Services, 433 U.S. 425, 458, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). "Thus, as in most other areas of the law, we must engage in the delicate task of weighing competing interests." Westinghouse Electric Corp., 638 F.2d at 578. Even if the required disclosures were of private rather than public information, therefore, New Jersey's strong interest in the qualifications of persons engaged in the hazardous and solid waste industries, coupled with the regulations of the Department of Environmental Protection safeguarding unauthorized disclosure, would require the conclusion that the privacy interest relied upon must yield.
 
 E. Ripeness
 
 114
 The plaintiffs point out that the Department of Environmental Protection has by regulation required the completion of a Personal History Disclosure Form by all persons who must be listed in a disclosure statement. See N.J.A.C. 7:26-16.4. This form appears to require disclosures more extensive than those specified in N.J.S.A. 13:1E-127(e). Information requested includes the names of persons living with the filer, the names and occupations of the filer's relatives, the filer's residential history over the past 20 years, and all professional, fraternal, social, educational, or charitable organizations to which the filer has been or is a member.
 
 
 115
 Arguably the Department's Personal History Disclosure Form is inconsistent with Pub.L.1983, ch. 392, in that it seeks some information not even rationally related to an investigation into the qualifications of licensees. Consideration of such a contention appears to be precluded by Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Some of the information specified in the Personal History Disclosure Form may fall within the zone of privacy with respect to personal rather than public information that is constitutionally protected. The posture in which the case is before us, however, precludes our consideration of a challenge to the use of the Personal History Disclosure Form. The plaintiffs and the defendants moved before the district court for a judgment that the statute is facially invalid. Neither party made any record with respect to the state's interests that might, as required by the governing caselaw, be balanced against private interests in nondisclosures of the additional information called for in the form. Thus we do not now determine whether, to the extent that the Personal History Disclosure Form requires fuller disclosure than does the statute, it may involve invasion of federally protected privacy interests.
 
 F. Vagueness
 
 116
 The plaintiffs urge as a separate ground for affirmance their contention that Pub.L.1983, ch. 392 is in two respects so vague that it violates standards of due process.[5] They point, first, to the disqualifying criterion in N.J.S.A. 13:1E-133(e). This provision provides for disqualification if a person listed in a disclosure statement "has pursued economic gain in an occupational manner or context which is in violation of the criminal or civil public policies of the State, where such pursuit creates a reasonable belief that the participation of that person in any activity required to be licensed under this act would be inimical to the policies of this act." Second, plaintiffs challenge the definition of a key employee, which is defined as a "person employed ... in a supervisory capacity or empowered to make discretionary decisions with respect to solid waste or hazardous waste operations...." N.J.S.A. 13:1E-127(f).
 
 
 117
 There are two criteria for evaluating a vagueness challenge under the due process clause. First, a statute making conduct unlawful must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). Second, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Id. The first criterion is not applicable because neither of the challenged provisions makes conduct unlawful. The vagueness challenge here is directed at the standards for disqualification of licensees. This is classic economic legislation. In dealing with such a case the Supreme Court has advised that
 
 
 118
 [t]he degree of vagueness that the Constitution tolerates--as well as the relative importance of fair notice and fair enforcement--depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of a regulation by its own inquiry, or by resort to an administrative process.
 
 
 119
 Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (footnotes omitted).
 
 
 120
 With these criteria in mind, we have no difficulty rejecting the vagueness challenge to the key employee definition. The references to persons employed in a supervisory capacity and to persons empowered to make discretionary decisions are qualified in the statute by the exclusion of "employees exclusively engaged in the physical or mechanical collection, transportation, treatment, storage or disposal of solid or hazardous waste." N.J.S.A. 13:1E-127(f). Plainly the discretion of the Department of Environment Protection with respect to which employees can cause disqualification is sufficiently circumscribed that discriminatory enforcement in that respect is not a realistic fear.
 
 
 121
 The vagueness challenge to N.J.S.A. 13:1E-133(e) is more substantial. As we observed with respect to the challenge to the Personal History Disclosure Form, however, the posture in which the case is before us makes consideration of that challenge inappropriate. The plaintiffs did not attempt to prove that any plaintiff, or any key employee of a plaintiff, had engaged in, or desired in the future to engage in, conduct which might run afoul of the subsection. Moreover neither party addressed any possible clarification of section 133(e) that might take place in the course of the administrative process in the Department of Environmental Protection or in a judicial review of such administrative action.[6] Given that this case presents a facial challenge to the statute, we are not prepared to say that section 133(e) is "impermissibly vague in all of its applications." Hoffman Estates, 455 U.S. at 497, 102 S.Ct. at 1193. Hence, as with the challenge to the Personal History Disclosure Form, the vagueness challenge to section 133(e) is not presented in a manner making it ripe for adjudication.
 
 G. Freedom of Association
 
 122
 We come, finally, to the claimed constitutional violation on which the plaintiffs place most emphasis, and on which the district court relied in holding Pub.L.1983, ch. 392 unconstitutional; namely, that the disqualifying criteria in N.J.S.A. 13:1E-133 violate constitutional rights of association. These associational rights violations are alleged to have two effects. First, licensees may not associate in the waste disposal business with persons required to be listed in a disclosure statement who have been convicted of or have unresolved charges of committing designated offenses, or who lack a reputation for good character, honesty, and integrity. Second, persons so convicted or charged, and persons who lack such a reputation, are denied the opportunity to gain entry to the waste disposal business.
 
 
 123
 The term "freedom of association" has been used by the Supreme Court in two distinct senses. The first is the recognition of a zone of individual autonomy with respect to individual human relationships that must be secured against undue intrusion by the state. See Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). The second is the recognition of the right to engage in collective action in order to advance interests shared with others such as political, social, economic, educational, religious, and cultural ends. Id. Legal protections of these analytically separate freedoms of association differ because they are based upon different constitutional premises. The first--freedom of intimate association--recognizes our status as autonomous human beings protected from governmental interference that denigrates our personality and prevents our full self fulfillment. The second--freedom of group association--recognizes that group action for the advancement of shared interests is an indispensable political means of resolving social tensions in a democratic manner. The plaintiffs contend that the disqualification provisions impermissibly impair freedom of association in both senses.
 
 
 124
 (1) Intimate association
 
 
 125
 The disqualifying criteria, even as the state construes N.J.S.A. 13:1E-133, will exclude a significant number of persons from participation in the waste disposal business. That exclusion does not, however, involve the intimate associations with which the Supreme Court has been concerned. As Justice Brennan observed:
 
 
 126
 The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend to the creation and sustenance of a family--marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. Family relationships, by their nature, involve deep attachments and commitments to the necessary few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and a seclusion from others in critical aspects of the relationship. As a general matter only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty. Conversely, an association lacking these qualities--such as a large business enterprise--seems remote from the concerns giving rise to this constitutional protection.
 
 
 127
 Roberts v. Jaycees, 104 S.Ct. at 3250-51 (1984) (citations omitted). A waste disposal business licensed by the state as a public utility is simply not the kind of intimate associations that has qualities analogous to a family. It is far more analogous to a typical business enterprise. Such enterprises, small and large alike, involve public rather than private aspects of the lives of the participants, and they engage in an activity that has little if anything to do with personal, as distinct from economic, self realization.
 
 
 128
 The plaintiffs urge that intimate associations are involved because, entirely apart from their effect on association in the waste disposal business, the disclosure and disqualification requirements will have a chilling effect upon familial relationships. Construing the disqualification provision as the state recommends, it does not, as the plaintiffs' argument suggests, permit disqualification because a member of an applicant's family was once convicted of a crime or has a bad reputation. Disqualification will occur only because of the conviction or bad reputation of some person participating in the enterprise in a significant manner. In addition, any chilling effect upon intimate association that may occur because of the necessity to maintain a reputation for good character, honesty, and integrity is simply too remote and speculative to be a basis for holding N.J.S.A. 13:1E-133(c) unconstitutional.[7]
 
 
 129
 (2) Group association
 
 
 130
 Associations that come together to advocate positions on political, social, economic, educational, religious, or cultural issues can only be regulated if a compelling state interest, unrelated to the suppression of ideas, justifies the state's infringement and only if the protection of that interest cannot be achieved through less restrictive means. See, e.g., Roberts v. Jaycees, 104 S.Ct. at 3252; Brown v. Socialist Workers 74 Campaign Committee, 459 U.S. 87, 91-92, 103 S.Ct. 416, 419-20, 74 L.Ed.2d 250 (1982); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963). The statute under consideration does not fall within the cases referred to because it does not regulate associations formed for expressive purposes. Rather, it regulates only associations formed for the economic purpose of profiting from waste disposal.
 
 
 131
 The plaintiffs contend that the Personal History Disclosure Form, discussed in Part V B above, seeks information about membership in associations that engage in advocacy. While that may be the case, membership in such an association is not a ground for disqualification. It will be time to consider the claim that the inquiry into the fact of membership in such associations has a chilling effect on first amendment group association rights when a challenge to the Personal History Disclosure Form is ripe for adjudication.
 
 
 132
 Although associations formed for the pursuit of private economic interests have received some first amendment protection, that protection is not as complete as the protection afforded social or political associations. See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 912, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982); Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 562-63, 100 S.Ct. 2343, 2349-50, 65 L.Ed.2d 341 (1980); Virginia Pharmacy Board v. Virginia Citizens Consumer Union, 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976). Identifying the appropriate level of scrutiny of state intrusion into membership in a group formed for private economic gain may in many instances be dispositive. In her concurring opinion in Roberts v. Jaycees, Justice O'Connor asserts that governmental infringements upon commercial group associational rights should be measured by whether those infringements are rationally related to the government's regulatory interests. See 104 S.Ct. at 3259 (O'Connor, J., concurring). That extremely deferential review standard would undoubtedly require rejection of plaintiffs' group association claim. The fact that no other Justice joined in her concurrence, however, suggests caution in accepting the rational relationship standard as the appropriate standard to evaluate interference with commercial associations. Thus, we will assume for purposes of analysis that a higher level of scrutiny is appropriate.
 
 
 133
 Clearly disqualification of persons convicted of a crime, persons charged with a crime and not yet acquitted, persons having bad reputations for integrity, and persons who have earned their living by antisocial activity advances the New Jersey interest in keeping the sensitive waste disposal business free from the influence of organized crime. That interest, moreover, considering New Jersey's history of difficulties in the waste disposal business, is compelling. Nor is the exclusion based upon the state's desire to suppress ideas, excepting perhaps the idea that crime pays. Thus the disqualification provisions in section 133 meet the first half of the test for the highest level of scrutiny.
 
 
 134
 The second half of that test--whether the state's ends could be achieved through less intrusive means--is in our view satisfied as well. Disqualification of persons convicted of a designated crime is not automatic. They may show or be shown to have been rehabilitated. See N.J.S.A. 13:1E-133(b). The facts to be considered in determining rehabilitation are relevant. Putting the burden upon the applicant of showing rehabilitation places that burden on the party most likely to have access to the material information. The clear and convincing evidence standard of proof is commensurate with the serious nature of the listed offenses, on the one hand, and the state's vital interest in the waste disposal business, on the other. Aside from permitting convicted felons to hold significant positions in the industry, the plaintiffs have not suggested any other means that the state might have taken that would be less intrusive upon their right to associate for economic gain in that industry.
 
 
 135
 The disqualification on the basis of a pending unresolved criminal charge, N.J.S.A. 13:1E-133(d) also passes heightened scrutiny. The state's compelling interest is the same; protecting the sensitive waste disposal business from the influence of organized crime. This section, unlike section 133(b), does not provide for qualification upon a showing of rehabilitation. Section 133(d) does, however, permit deferral of a ruling on licensing until the charge has been resolved. The legislative purpose in distinguishing between convictions and pending charges is plain. Going forward with a license hearing while a charge is pending and requiring the person against whom the charge is made to demonstrate rehabilitation, presents obvious problems with respect to the privilege against self incrimination. Accordingly, the deferral of a ruling accommodates group associational rights as fully as circumstances permit.
 
 
 136
 The disqualification of persons unable to establish by clear and convincing evidence their reputation for good character, honesty, and integrity (N.J.S.A. 13:1E-133(c)) presents a more difficult question. If, as Justice O'Connor suggests in Roberts v. Jaycees, we are confined to rational basis review, that provision is valid, for it is rational for the state to insist on such reputation as a badge of entry to what it has determined is a sensitive industry and to relieve itself of the burden of nonpersuasion on that issue. Assuming section 133(c) must survive a heightened scrutiny, however, we must consider: (1) whether disqualification based on bad reputation is no more intrusive than is necessary for the accomplishment of the compelling state interest we have recognized; and (2) whether placing the burden of nonpersuasion on the applicant on that interest is also necessary.
 
 
 137
 Not without some misgivings, we conclude that section 133(c) is valid.[8] The state has identified the waste disposal business as one that is particularly sensitive to infiltration by organized crime. Its choice to exclude persons having bad reputations from participating in that industry is a necessary element of preventing the criminal infiltration that the licensing scheme is designed to prevent. It is the risk of infiltration that is the state's compelling interest, and exclusion on the basis of bad reputation appears to be the only means of avoiding that risk. Moreover, for the same reason that the state could place the burden of proving rehabilitation after conviction by clear and convincing evidence on applicants, it can, upon the minimum showing of bad reputation required in section 133(c), place a similar burden on license applicants with respect to good character.
 
 
 138
 We turn, finally, to the most problematical provision of the statute: N.J.S.A. 13:1E-133(e). Plaintiffs contend that because of the very vagueness of this provision its chilling effect upon their ability to engage in commercial group association is substantially impinged. As we noted with respect to their privacy claim, however, the present record does not contain any information about possible limiting constructions. We are not prepared to say that no application of section 133(e) could validly infringe upon group associational rights. In addition, this section is severable. Thus, we hold that the challenge to that section on group association grounds is, like the challenge to that section on privacy grounds, on this record, not ripe for adjudication.
 
 VI.
 Conclusion
 
 139
 The plaintiffs chose to have the court enter final judgment on a complaint that only challenged the facial validity of the statute. The judgment declaring Pub.L.1983, ch. 392 to be facially invalid in all respects and enjoining its enforcement must be reversed. We have rejected each ground asserted by the plaintiffs in support of any less inclusive declaration of facial invalidity. Given that the complaint raises no factual allegation of how the statute would be applied to the plaintiffs the only proper judgment is a dismissal of the complaint in its entirety. The judgment appealed from will, therefore, be reversed, and the case will be remanded for the entry of judgment in favor of the defendants.
 
 
 
 [1]
 This organization is not one of the plaintiffs in this action
 
 
 [2]
 Several defendants in that case pleaded guilty to the antitrust charges or were convicted. See State v. New Jersey Trade Waste Ass'n, 191 N.J.Super. 144, 148, 465 A.2d 596, 597 (Law Div.1983), certif. denied, 97 N.J. 688, 483 A.2d 201 (1984)
 
 
 [3]
 Except for the casino industry no other business in New Jersey is subject to licensing, disclosure, and investigation similar to that imposed by Pub.L.1983, ch. 392. See N.J.S.A. 5:12-80 to 5:12-95 (Supp.1984-1985)
 
 
 [4]
 The severability issue was raised in the district court in a post trial motion that was denied without opinion
 
 
 [5]
 Because Pub.L.1983, ch. 392 is severable, the plaintiffs' vagueness challenge focusing on two features of the law is not a ground for affirming the judgment holding that the entire statute is void. Clearly other grounds for disqualification would remain if, for example, the ground set forth in N.J.S.A. 13:1E-133(e) were to fall. Thus at most the plaintiffs' vagueness challenge could result in only a partial affirmance
 
 
 [6]
 The Supreme Court has recently stated that "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." Hoffman Estates, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5 quoted in Kolender v. Lawson, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983). See also Wainwright v. Stone, 414 U.S. 21, 22-23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973) (per curiam); Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). We are hesitant, therefore, to strike N.J.S.A. 13:1E-133(e) as vague when the statute has yet to be construed by either the New Jersey courts or the New Jersey Department of Environmental Protection. We also note that the district court did not rely on vagueness in holding Pub.L.1983, ch. 392 unconstitutional
 
 
 [7]
 Because we hold that Pub.L.1983, ch. 392 does not affect intimate associational rights, there is no need to address the appropriate standard of judicial scrutiny of state action affecting such rights
 
 
 [8]
 While evidence of character is usually not admissible for the purpose of proving that a person acted in conformance with that character in a given instance, see Fed.Evid.Rule 404(a); N.J.Evid.Rule 47, it is generally admitted for other purposes. See, e.g., Fed.Evid.Rules 404(a) and (b), 803(21), N.J.Evid.Rules 47 and 63(28). Thus, although it is often the case that a bad reputation is undeserved, it is reasonable for the New Jersey Legislature to consider reputation in the context of a licensing scheme