**HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION LOCAL 54 and Frank Gerace, President Hotel and Restaurant Employees and Bartenders International Union Local 54 and Frank Materio, Business Agent Hotel and Restaurant Employees and Bartenders International Union Local 54, Plaintiffs,**

v.

**Walter N. READ, Chairman, Donald Thomas, Commissioner, Carl Zeitz, Commissioner, Joel Jacobson, Commissioner, and E. Kenneth Burdge, Commissioner, Constituting the New Jersey Casino Control Commission, and Thomas O'Brien, Director Department of Law and Public Safety Division of Gaming Enforcement and Department of Law and Public Safety Division of Gaming Enforcement and Thomas Kean, Governor, Defendants.**

Civ. A. No. 81–2630(SSB).

United States District Court,
D. New Jersey.

Aug. 25, 1986.

Meranze & Katz by Michael N. Katz, William Wallen, Atlantic City, N.J., for plaintiff Local 54.

Robert J. Genatt, Gen. Counsel, N.J. Casino Control Comn. by John Zimmerman, Sr. Asst. Counsel, Leonard J. DiGiacomo, Steven M. Ingis, Asst. Counsels, and Anthony J. Parrillo, Acting Director, Div. of Gaming Enforcement by Gary A. Ehrlich, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

BROTMAN, District Judge:

The Hotel and Restaurant Employees and Bartenders International Union Local 54 ("Local 54") and its President, Frank Gerace, initiated this action in order to prevent the enforcement of sections 86 and 93 of the New Jersey Casino Control Act ("Casino Control Act"), N.J.S.A. 5:12–86, 93, against the union and officers Gerace, Frank Materio and Karlos LaSane. Plaintiffs also sought a declaratory judgment that the statute is unconstitutional and damages from defendants, who include the Casino Control Commission (the "Commission"), the Chairman, Walter Read, and other members of the Commission, the New Jersey Division of Gaming Enforcement (the "Division"), the Director of the Division, Thomas O'Brien, and the Governor of New Jersey, Thomas Kean.

Presently before the court are several motions. First, defendants seek to dismiss Local 54's complaint due to the doctrine of *res judicata*. Second, both sides have made cross-motions for summary judgment. The court heard oral argument on these motions on February 14, 1986 and reserved its decision.

Based on the submissions and arguments of the parties, the court finds that defendants' motion to dismiss is unwarranted, but the court will grant summary judgment in favor of defendants based on the absence of a genuine issue of material fact.

## I. Procedural Background

The history of this litigation, which began in 1981, is lengthy and complex, involving proceedings before the Commission, the New Jersey state courts, this court, the Third Circuit Court of Appeals, and the United States Supreme Court. This court detailed most of the procedural background in a series of earlier opinions, most recently *Hotel and Restaurant Employees and Bartenders International Union Local 54 v. Read*, 597 F.Supp. 1431, 1434–37 (D.N.J. 1984) ("Read I"). *See also Hotel and Restaurant Employees and Bartenders International Union Local 54 v. Read*, 597 F.Supp. 1451 (D.N.J.1984), *aff'd* 772 F.2d 895 (3d Cir.1985) ("Read II"); *Hotel and Restaurant Employees and Bartenders International Union Local 54 v. Danzinger*, 536 F.Supp. 317 (D.N.J.1982), *rev'd* 709 F.2d 815 (3d Cir.1983) ("Danzinger"), vacated and remanded *sub. nom. Brown v. Hotel and Restaurant Employees and Bartenders International Union Local 54*, 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) ("Brown"). The court need not repeat its recitation of the events leading up to *Read I*.

In *Read I* this court granted the motion of Gerace and Materio to intervene in their own behalf in this action. But the court also denied the motions by all plaintiffs to enjoin preliminarily the enforcement of the Commission's order of September 12, 1984 which required the removal of Gerace, Materio and LaSane from their union positions. The court based its decision in part on the conclusion that plaintiffs had little likelihood of success of the merits of their claim that the Commissions' actions pursuant to the Casino Control Act violated their first amendment rights. *Read I, supra*, 597 F.Supp. at 1446–48.

While denying the motions for preliminary injunctive relief, the court invoked the Pullman abstention doctrine and refrained from further action until the resolution of state law issues in two state court appeals

of the Commission's orders. *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Those appeals, one by the union and the other by the disqualified officials, were then pending in the New Jersey Superior Court, Appellate Division. This court advised Local 54 and its officials that they could elect to have their federal constitutional claims decided by either the state courts or the federal court (after the resolution of the state law issues). *Read I, supra*, 597 F.Supp. at 1441; *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) ("England").

The union officials advised this court and the Appellate Division that they wished to have their constitutional claims decided in state court. Appendix to Defendants' Motion to Dismiss at 1–4. By contrast, Local 54 declared its desire to have its constitutional claims decided in federal court. *Id.* at 5–8.

The Appellate Division rejected all challenges to defendants' actions raised by the union officials. *In the Matter of Hotel and Restaurant Employees and Bartenders International Union Local 54*, 203 N.J.Super. 297, 496 A.2d 1111 (App.Div. 1985) ("Appellate Division Opinion"). On the federal claims the Appellate Division held that the Commission did not violate the first amendment associational rights of Gerace and Materio, that Section 86(f) of the Casino Control Act is not vague on its face or as applied to the union officials, and that the Commission did not deprive Gerace of his due process rights. *See id.* at 322–39, 496 A.2d 1111.

On November 1, 1985 the New Jersey Supreme Court denied the petitions for certification filed by the union officials. Defendants' Appendix at 14–15. Gerace and Materio subsequently petitioned the United States Supreme Court for a writ of certiorari, but the Court denied that petition on March 24, 1986. The union chose to return to this court where both sides have filed the pending motions.

## II. Defendants' Motion to Dismiss

In their motion to dismiss, defendants argue that all of the issues remaining to be decided in Local 54's complaint have already been litigated and decided in the Appellate Division proceedings. They contend that the union's federal claims are so closely linked to those previously asserted by the union officials that *res judicata* now requires a dismissal of Local 54's complaint. The union counters that its federal claims are sufficiently distinct from Gerace and Materio to preclude the application of that doctrine.

The court must analyze this motion in the context of its earlier decision to invoke the *Pullman* abstention doctrine. *See* Discussion in *Read I, supra*, 597 F.Supp. at 1441–45. The court abstained in light of several then-unresolved questions involving the interpretation of New Jersey's Casino Control Act as it applied to the plaintiffs. Despite abstaining, however, the court noted the applicability of *England* under which "[p]laintiffs are entitled to reserve the right to have their federal claims heard in this court...." *Id.* at 1441; *England, supra*, 375 U.S. at 419, 84 S.Ct. at 466–67; *see also Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984) ("Migra").

In *England* the Supreme Court faced a situation similar to the present case in that the state court was asked to construe a state statute "against the backdrop" of a federal constitutional challenge. 375 U.S. at 420, 84 S.Ct. at 467. Whether or not the state court chose to address the federal constitutional issue, a party could still in advance of a state court action reserve the right to return to federal court to litigate that federal issue. *Id.* at 421, 84 S.Ct. at 467–68. The *England* court held that when a litigant makes this explicit reservation, "his right to return [to the federal court] will in all events be preserved." *Id.* at 422, 84 S.Ct. at 468. Even in the absence of an express reservation, "in no event" can a litigant be denied his right to return unless he "voluntarily ... and fully

litigated his federal claims in the state courts." *Id.* at 421, 84 S.Ct. at 468.

In the present case Local 54 explicitly reserved its right, pursuant to *England* and *Read I,* to return to this court with its federal claims. *See* Defendants' Appendix at 5–8. Although Gerace and Materio "fully litigated" their federal claims in state court, it is clear that Local 54 did not.[1] Given the union's obvious rights under *England,* defendants' motion to dismiss amounts to an argument that the union officials' litigation of their federal claims effectively *amounted to* a full litigation of Local 54's claims as well.

Within this context the court must now consider the application of *res judicata.* That doctrine holds that a "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra, supra,* 104 S.Ct. at 896; *accord Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). *Res judicata* actually consists of two separate concepts: "claim preclusion" and "issue preclusion". Claim preclusion forecloses "litigation of a matter that has never been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra, supra,* 104 S.Ct. at 894 n. 1. By comparison, issue preclusion forecloses *"re* litigation of a matter that has been litigated and decided." *Id.* (emphasis added).[2] One of the issues at stake here is whether in fact the claims now raised by the union have been litigated or not before the state court. Even if the claims have been litigated, however, the question will still remain whether Local 54 is precluded from litigating them now.

Defendants have asserted that either claim preclusion or issue preclusion justifies dismissal of plaintiff's complaint. In fact, both concepts involve the interpretation of similar factors in the case at bar. For example, claim preclusion bars relitigation of a claim if the party asserting the doctrine shows that there has been

> (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action.

*United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984). Issue preclusion also applies only in a circumstance in which one of the same "parties or their privies" have attempted to relitigate the same issue in a subsequent proceeding between them. *Washington Township v. Gould,* 39 N.J. 527, 533, 189 A.2d 697 (1963). Thus under either claim preclusion or issue preclusion theory the court is faced with the same threshold concern: Are the two litigants in the current action identical to or in privity with parties who have previously litigated the same issue? If not, the identity of the "causes of action" becomes immaterial.

In the instant case defendants concede that Local 54 and the individual officials are separate parties. *See e.g.,* Defendants' Reply Brief in Support of Motion to Dismiss at 3. The only question is whether the union was in privity with the officials in their state court action.

Defendants correctly identify privity as "an elusive concept, without any precise definition of general applicability...." *Nash City Board of Education v. Biltmore Co.,* 640 F.2d 484, 493 (4th Cir.), *cert. denied* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188, *reh'g denied* 454 U.S. 1117, 102 S.Ct. 692, 70 L.Ed.2d 654 (1981) (cita-

---

1. This court ruled in *Read II* that the claims of all plaintiffs "involve common questions of law and fact." 597 F.Supp. at 1454. But it also explicitly stated that after abstention the union and its officials "may each assert their own interests through separate counsel in state court, and if the case returns to federal court, in that forum as well." *Id.* at 1454–55. Clearly both sides were permitted to proceed on separate paths.

2. In their brief defendants have used the term "res judicata" to mean "claim preclusion" and the term "collateral estoppel" to mean "issue preclusion". The court will use *res judicata* as it is used by the Supreme Court, which encompasses both concepts. *See Migra, supra,* 104 S.Ct. at 894 n. 1.

tion omitted). For example, the *Nash City* panel merely stated that privity exists when " 'the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata.*' " *Id.* at 494, *quoting Bruszewski v. United States,* 181 F.2d 419, 423 (3d Cir.) (Goodrich, J., concurring), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

The clearest definition of privity provided by the New Jersey Supreme Court is when one party " 'is so identified in interest with such [other] party that he represents the same legal right on exactly the same controversial issue.' " *Bango v. Ward,* 12 N.J. 415, 422, 97 A.2d 147 (1953), *quoting Templeton v. Scudder,* 16 N.J.Super. 576, 583, 85 A.2d 292 (App.Div.1951).[3] Ultimately, relitigation should only be barred based on privity when "reason and justice" so require. *Hudson Transit Corp. v. Antonucci,* 137 N.J.L. 704, 707, 61 A.2d 180 (E. & A. 1948).

Local 54's claims before this court are indeed quite similar to those litigated by the union's officials, involving identical factual circumstances and constitutional amendments. But they are not so closely linked as to constitute "the same legal right on exactly the same controversial issue." For example, the union asserts that its first amendment claims are based on its associational rights to function as a union on behalf of casino employees. The union officials, on the other hand, based their first amendment challenges on their individual freedom to associate with other persons. Whether the union actually does have a viable legal right which defendants infringed remains to be decided on the merits. But there is no question that Local 54

is *asserting* a different legal right from the officials.[4] Furthermore, as the court held in *Read I,* the union has alleged a threatened injury "distinct" from that alleged by the union officials—the threat to their union activities rather than an inability to associate with particular individuals. *Read I, supra,* 597 F.Supp. at 1438. For these reasons the court finds that Local 54 was not in privity with the union officials.

This decision is consistent with the court's earlier abstention in this case and Local 54's preservation of its right under *England* to return to this court with its federal claims. The court indicated when it abstained that the union and its officials could proceed along different paths. *See* n. 1, *supra.* Based on the above analysis, the court concludes that "reason and justice" require that Local 54 be permitted to proceed in this court with its remaining federal claims. The court will deny defendants' motion to dismiss based on the doctrine of *res judicata.*

Due to the length and complexity of this case it is necessary to clarify precisely the basis upon which the union may now proceed. The union claims that its constitutionally protected rights to function as a union on behalf of its members have been infringed by defendants' actions pursuant to the Casino Control Act. The sole basis for Local 54's legal claims are that the rights at stake are peculiar to the union as a union. The union clearly may not assert claims based on the constitutional rights of its officials. Those officials litigated and lost on their constitutional claims before the state court, and those claims are now barred. This court will disregard any contentions made in Local 54's submissions

---

3. Both parties have cited this definition as authoritative.

4. This court noted in an earlier opinion in this case that the "first amendment's protection of freedom of association extends to labor union activities, such as the right to solicit union membership, and to join for the purposes of redress in the grievances of union members." *Danzinger, supra,* 536 F.Supp. at 334, *citing United Mine Workers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 88 S.Ct. 353, 19

L.Ed.2d 426 (1967). This is a different right from the personal freedom of association at stake in the Appellate Division decision. *See Trade Management Association, Inc. v. Hughey,* 780 F.2d 221, 236–37 (3d Cir.1985) (Relying on *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Third Circuit noted the distinction between claims based on "group associations" and those based on "intimate associations").

which refer to a deprivation of the rights of those officials rather than the union itself, acting on behalf of its members.

### III. Cross-Motions for Summary Judgment

The standard for granting summary judgment is a stringent one. Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Special Jet Services, Inc. v. Federal Insurance Co.*, 643 F.2d 977 (3d Cir.1981); *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3d Cir.1978). In deciding whether an issue of material fact does exist, the court is obligated to view all doubt in favor of the nonmoving party. *Tomalewski v. State Farm Insurance Co.*, 494 F.2d 882 (3d Cir.1974); *Smith v. Pittsburgh Gage and Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972).

Although the burden of proof on a motion for summary judgment lies with the moving party, the opposing party

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). The court must rule "on the record the parties have actually presented, not on one potentially possible." *Madeirense v. Stulman*, 147 F.2d 399 (2d Cir.1945). *See Judson v. Peoples Bank & Trust Co. of Westfield*, 17 N.J. 67, 75, 110 A.2d 24 (1954). If a party fails to respond in the required manner, the court may, if appropriate, enter summary judgment against it.

Plaintiff originally included twelve separate counts within its second amended complaint. *See* Second Amended Complaint (the "Complaint"), September 25, 1984. The United States Supreme Court, upholding a decision of this court, conclusively disposed of Counts 1, 2 and 3 involving preemption and supremacy clause issues. *See Brown, supra.* There are now cross-motions for summary judgment as to all the remaining counts in the Complaint.

Based on the submissions of the parties, the union has obviously abandoned Counts 4 and 12 of the Complaint. Count 4 charges that Section 93(b) of the Casino Control Act violates the equal protection clause of the fourteenth amendment. Count 12 contains an allegation that by "its application and its enforcement" Section 93(b) violates the contract clause of the Constitution, U.S. Const. Art. I, § 10. Plaintiff does not refer to these claims in the cross-motions for summary judgment and presents absolutely no factual or legal basis to support them.

Plaintiff also makes no reference to Counts 5 and 6 of the Complaint, which in extremely imprecise terms alleges "due process" violations stemming from Section 93. The union did allude to due process claims in other counts of the Complaint, and the court will address them in that context. The court will also treat Counts 5 and 6 as abandoned because there is no independent basis for them.

For the above-stated reasons, the court will grant summary judgment in favor of defendants and against plaintiff on Counts 4, 5, 6 and 12.

The remaining counts of the Complaint allege in rather imprecise terms violations of the union's first amendment right of freedom of association and fifth and fourteenth amendment rights of due process. Count 7 refers to Section 93 of the Casino Control Act while Counts 8, 9, 10 and 11 rely on Section 86(f). A brief review of these statutory provisions indicates the close link between these sections and the claims pertaining to them.[5]

The Casino Control Act established the regulatory structure for the casino gambling industry in Atlantic City. Section 93 requires that "[e]ach labor organization,

---

5. A more detailed analysis of the Casino Control Act is contained in *Danzinger, supra,* 536 F.Supp. at 321–24, and the court will rely on that analysis as background.

union or affiliate seeking to represent employees licensed under this act and employed by a casino hotel or a casino licensee shall register with the Commission annually...." N.J.S.A. 5:12–93(a). In addition, the "officers, agents and principal employees" of the labor organization must not fall within any category of Section 86 of the act, which lists criteria for disqualification of casino license applicants. N.J.S.A. 5:12–86, 93(b). The disqualification criterion at issue in this case is an officer's identification as an "associate of a career offender or career offender cartel in such a manner which creates a reasonable belief that the association is of such a nature as to be inimical to the policy of this act and to gaming operations." N.J.S.A. 5:12–86(f).

Should any "principal" union officials fail to meet the Section 86(f) standards, the Commission has the power to impose sanctions on the union, including a prohibition on the collection of union dues or on the administration of pension or welfare funds. N.J.S.A. 5:12–93(b). The Commission may also fashion a sanction which is of "lesser magnitude" than those explicitly listed in Section 93(b). *Danzinger, supra*, 536 F.Supp. at 330; N.J.S.A. 5:12–93(b). *See also Brown, supra*, 104 S.Ct. at 3191.

### A. Challenge to Section 93 of the Casino Control Act

█ In Count 7 the union contends that Section 93 violates its first amendment rights

> to the extent that said Act requires the registration of labor organizations seeking to represent employees within the casino and Casino Hotel Industry and provides for criminal and civil sanctions for failure to so register.

The court will consider separately the union's challenge to the registration requirement in Section 93(a) and the sanctions provision in Section 93(b).

The court acknowledged earlier in this case that the first amendment's protection of freedom of association "extends to labor union activities, such as the right to solicit union membership, and to join for the purposes of redress in the grievances of union members." *See* n. 4, *supra; Danzinger, supra*, 536 F.Supp. at 334. This right of union members to engage in labor union activities falls within the Supreme Court's broader category of "group association," which is the right to engage in collective action in order to pursue "a wide variety of [shared] political, social, economic, educational, religious and cultural ends." *Roberts v. United States Jaycees, supra*, 104 S.Ct. at 3253; *Trade Management Association, Inc. v. Hughey, supra*, 780 F.2d at 236 (3d Cir.1985). Government interference with the "internal organization or affairs of the group" may amount to an infringement of the freedom of association. *Roberts, supra*, 104 S.Ct. at 3252, *citing Cousins v. Wigoda*, 419 U.S. 477, 487–88, 95 S.Ct. 541, 547–48, 42 L.Ed.2d 595 (1975). This right to associate is not absolute and infringements on the right may be justified by government actions which serve "compelling state interests ... that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.*

The *Roberts* case indicates that a two-step analysis is necessary to weigh the possible infringement of plaintiff's first amendment rights here. First, the court must determine whether the Casino Control Act requirements actually do infringe upon the union's protected activities. Second, if the requirements do infringe upon protected activities, the court must consider whether that infringement is justified.

Local 54 contends first that the registration requirement in Section 93(a) is *per se* an unconstitutional infringement on its protected activities; this argument is unfounded. As the Supreme Court observed earlier in this case, the union "[h]as not shown that this requirement of registration imposes any burden on them." *Brown, supra*, 104 S.Ct. 3190 n. 15. Although the Court made that statement in the context of discussing the union's preemption argument, it is equally applicable now. The union has produced neither precedent nor facts to indicate that the registration requirement itself prevents the union from performing

its responsibilities as the collective bargaining agent for its members. *See id.* at 3191; *Hill v. Florida,* 325 U.S. 538, 543, 65 S.Ct. 1373, 1375, 89 L.Ed. 1782 (1945) (a filing requirement "in and of itself" does not prevent a union from functioning as a union). In short, Section 93(a)'s registration requirement does not infringe on plaintiff's constitutionally protected union activities.

The next question for the court is the constitutionality of the sanctions provision in Section 93(b). The only relevant sanction is the Commission's order of September 12, 1984 which directed the union to remove Gerace and Materio from their positions. *Read I, supra,* 597 F.Supp. at 1436–37. The sanctions explicitly listed in Section 93(b) are not at issue because the Commission has chosen not to invoke them against Local 54.[6] In the absence of their use against this plaintiff, the validity of those sanctions under the first amendment is not ripe for review. *See Brown, supra,* 104 S.Ct. at 3192. Consequently, the court need only address the question of whether the order to remove these officials amounted to an unconstitutional infringement of the union members' rights.[7]

The court must first determine whether the removal of these officials actually inhibits the union from carrying out any constitutionally protected activities. The Supreme Court noted earlier in this case that the question of whether a particular sanction prevents a union from "functioning as a labor union" may require a factual inquiry. *See Brown, supra,* 104 S.Ct. at 3191 (discussed in context of analyzing union dues sanction).

On the union's motion for a preliminary injunction, this court held a hearing in which both sides were permitted to present witnesses on the question of the impact of Gerace and Materio's disqualification on the union.[8] The union argued at that time that Gerace and Materio "are so critical to the functioning of Local 54" that their departure would "seriously undermine 'critical collective bargaining activities' and other internal union functions." *Read I, supra,* 597 F.Supp. at 1448. The court found that there were a number of other union officials capable of handling the duties performed by Gerace and Materio and concluded that the union would not be substantially harmed in performing its functions after the removal of these officials. *Id.* Plaintiff has presented absolutely no evidence since *Read I* on this question, and nothing has occurred to alter the court's earlier opinion. There is no basis for a finding that the disqualification of Gerace and Materio, in the absence of any other sanction, would infringe upon the union's ability to carry out its constitutionally protected activities on behalf of its members. The union could still clearly "function as a union".

Even if one assumes *arguendo* that the registration requirement and the disqualification of Gerace and Materio did inhibit the union's ability to function as a union, defendants would still be justified in their actions and the statute would still be constitutional if it was necessary to further a "compelling state interest". *Roberts, supra,* 104 S.Ct. at 3252.

The state asserts that its interest in enforcing Section 93 is to "[combat] corruption in the New Jersey casino industry." Defendants' Brief in Support of Cross-Motion for Summary Judgment. New Jersey's rationale for enacting the Casino Control Act is clearly enunciated in the Act itself. The Act declares that an "integral and essential element of successful regu-

---

6. On October 12, 1982 the Commission decided not to forbid the union from administering its pension and welfare funds. The Commission originally sought to bar the union from collecting dues from its members in the casino industry, but withdrew this sanction in the September 12, 1984 order. *See* Background Discussion in *Danzinger, supra,* 709 F.2d at 819–21; *Read I, supra,* 597 F.Supp. at 1434–37.

7. As part of its decisions in *Read I* and *Read II,* this court denied plaintiff union's application to preliminarily enjoin the enforcement of the Commission's September 12, 1984 order requiring the removal of the officials on first amendment grounds.

8. *See Read I, supra,* 597 F.Supp. at 1448–49 for a full discussion of that hearing.

lation and control of the casino industry is the credibility and integrity of the regulatory process and of casino operations." N.J.S.A. 5:12–1(b)(6). A cornerstone of the effort to build that public confidence was the attempt to protect the industry from the influence of organized crime. N.J.S.A. 5:12–1(b)(7). The United States Supreme Court recognized the importance of this goal earlier in this case and observed that the "vast amount of money" involved in the casino industry makes it a "particularly attractive and vulnerable target for organized crime." *Brown, supra,* 104 S.Ct. at 3182. Finally, the Appellate Division explicitly found earlier in this case that the state's interest in preventing the spread of organized crime influence in the gaming industry is "compelling". Appellate Division Opinion, *supra,* 203 N.J.Super. at 326–28, 496 A.2d 1111.

Although this court is not bound by the Appellate Division's legal interpretation of "compelling," that holding is strongly supported by the need to control the casino industry. This court agrees with the Appellate Division conclusion and finds that New Jersey's interest in enforcing Section 93 is indeed "compelling."

Given the state's compelling interest in protecting the integrity of the casino industry, both the registration requirement and the Commission's order to remove the officers were tailored narrowly enough to further that interest while avoiding an undue restriction on the union's possible first amendment rights. First, the registration requirement imposes no penalty at all. Second, the Commission's 1984 order did no more than seek the removal of those officials identified directly as engaging in associations "inimical" to the interest of preventing organized crime influence in the industry.[9] In sum, neither the sanction imposed by the Commission, not the statutory section which authorized it, N.J.S.A.

5:12–93, violate any first amendment rights of Local 54 to act as a union on behalf of its members. Consequently, the court will grant summary judgment in favor of defendants and against the union on Count 7 of the Complaint.

## B. Challenges to Section 86(f) of the Casino Control Act

■ Under Counts 8 and 10 of the Complaint, respectively, Local 54 charges that Section 86(f) is unconstitutionally overbroad on its face and "as applied". According to the union this overbreadth has violated its first, fifth and fourteenth amendment rights.

If Section 86 were overbroad on its face and swept within its regulatory net rights protected by the first amendment, it would invalidate the disqualification of the officials in this case. But the court has already addressed the union's facial overbreadth argument when it was raised in the union's first motion for a preliminary injunction. *Danzinger, supra,* 536 F.Supp. at 335–36. The court concluded at that time that Section 86 was aimed primarily at "illegal activities for profit" and not the kind of non-criminal, non-economic associations protected by the first amendment. *Id.* at 336. The union has presented no basis for the court to alter its conclusion that Section 86 (and therefore subsection 86(f)) "does not reach so far into the realm of protected activities as to call for its facial invalidation [on overbreadth grounds]." *Id.*

Local 54's additional contention that Section 86(f) is unconstitutionally overbroad "as applied" states no valid claim. The point of an overbreadth challenge is not its application to the plaintiff's particular behavior, but rather its effect on the first amendment rights of others not presently before the court. *Broaderick v. Okla-*

---

9. The Commission's factual findings concerning the impact of Gerace and Materio's association with Scarfo on the casino industry were affirmed by the Appellate Division. *See* Appellate Division Opinion, *supra,* N.J.Super. at 326–28, 496 A.2d 1111. The issue concerned the associa-

tional rights of Gerace and Materio and the facts found in support of that decision have been fully litigated by the parties directly affected. The union may not question those findings now.

*homa,* 413 U.S. 601, 612–15, 93 S.Ct. 2908, 2916–18, 37 L.Ed.2d 830 (1973); *see also Village of Hoffman Estates v. Flipside, Inc.,* 455 U.S. 489, 499, 508, 102 S.Ct. 1186, 1193–94, 1198, 71 L.Ed.2d 362 (1982) (White, J., concurring), cited in *Danzinger, supra,* 536 F.Supp. at 335. Consequently, the court will grant summary judgment in favor of defendants and against plaintiff on both overbreadth challenges contained in Counts 8 and 10 of the Complaint.

In Count 9 the union alleges that Section 86(f) is "unconstitutionally vague" on its face. To succeed on a claim that a statute is unconstitutionally vague on its face, the plaintiff must demonstrate that the law fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and permits the "ad hoc and subjective" enforcement of the statue by officials charged with that responsibility. *Village of Hoffman Estates v. Flipside, Inc., supra,* 455 U.S. at 498, 102 S.Ct. at 1193, *quoting Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *see Danzinger, supra,* 536 F.Supp. at 336. The plaintiff must also prove that the statute is "invalid *in toto*—and therefore incapable of any valid application." *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974).

Local 54 raised its vagueness claim before this court in its initial preliminary injunction motion. *See Danzinger, supra,* 536 F.Supp. at 336–38. The court held at that time that the standard for disqualifying officials under Section 86(f) was sufficiently clear and objective to give a reasonable person notice of what conduct could be grounds for disqualification. *Id.* at 337. For example, the statute does not prohibit all associations with career offenders, but only those which create a "reasonable belief" that they would be "inimical" to the

anti-corruption policy of the Casino Control Act. N.J.S.A. 5:12–86(f). The court found this provision considerably less subjective than those struck down as vague in other Supreme Court cases. *Id., citing Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).[10] The union has presented no basis for the court to alter its earlier evaluation of Section 86(f).

The court notes in addition that in the Appellate Division's consideration of Gerace and Materio's appeal that court held that Section 86(f) was not vague as applied to those two officials. *See* Appellate Division Opinion, *supra,* 203 N.J.Super. at 332–34, 496 A.2d 1111. This issue was fully litigated by the only parties directly affected and must be given full faith and credit in this court.[11] Consequently, this court cannot possibly rule that there is *no* valid application of Section 86(f), and thus the statute cannot be impermissibly vague on its face. Based on the Appellate Division decision, as well as this court's previous ruling, the court concludes that Section 86(f) is not vague on its face. Defendants are entitled to summary judgment in their favor on Count 9 of the Complaint.

Count 11 of the Complaint merely alleges that Section 86(f) violates the rights "of the union and its officers" under the first, fifth and fourteenth amendments. This allegation is fully contained within the other above-discussed counts of the complaint. There is no independent basis for this count, and the court will dismiss it.

## IV. Conclusion

Based on the submissions and arguments of the parties, the court makes the following decisions. First, defendants' motion to dismiss the entire Complaint based on *res judicata* is denied. Second, on the cross-motions for summary judgment, the court

---

**10.** In *Coates,* the Supreme Court struck down an ordinance which proscribed conduct merely "annoying to persons passing by." 402 U.S. at 614, 91 S.Ct. at 1688. This court found that Section 86(f) "differs greatly" from that subjective standard. *Danzinger, supra,* 536 F.Supp. at 337.

**11.** The court cannot consider Local 54's lengthy but irrelevant attempts in its pleadings and briefs to reargue the Appellate Division's decision on this question.

grants summary judgment in favor of defendants and against plaintiff on all counts of the Complaint. There clearly are no remaining issues of material fact.

The court will enter an appropriate order.