**HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION LOCAL 54 and Frank Gerace, President and Frank Gerace and Frank Materio, individually,**

v.

**Walter N. READ, Chairman, Donald Thomas, Commissioner, Carl Zeitz, Commissioner, Joel Jacobson, Commissioner and E. Kenneth Burdge, Commissioner, constituting the New Jersey Casino Control Commission and Thomas O'Brien, Director, Department of Law and Public Safety, Division of Gaming Enforcement and Thomas Kean, Governor.**

**Appeal of HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION LOCAL 54.**

No. 86–5658.

United States Court of Appeals, Third Circuit.

Argued Aug. 4, 1987.

Decided Nov. 2, 1987.

Rehearing and Rehearing En Banc Denied Dec. 4, 1987.

Michael N. Katz (argued), Bernard N. Katz, Lynne P. Fox, Michael Weinstein, Meranze & Katz, Philadelphia, Pa., for appellants.

John P. Zimmerman (argued), Robert J. Genatt, Leonard J. DiGiacomo, New Jersey Casino Control Com'n, Trenton, N.J., Gary A. Ehrlich (argued), W. Cary Edwards, Thomas N. Auriemma, New Jersey Div. of Gaming Enforcement, Trenton, N.J., for appellees.

Before SEITZ, MANSMANN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The Hotel and Restaurant Employees and Bartenders International Union Local 54 ("Local 54") appeals the order of the district court granting the motion for summary judgment of the New Jersey Casino Control Commission ("Commission"), the Commission's chairman and members, the New Jersey Division of Gaming Enforcement ("Division"), the Division's director, and Thomas Kean, Governor of New Jersey, on Local 54's claims that certain sections of the New Jersey Casino Control Act ("Casino Control Act") violate its rights under the United States Constitution. *See* New Jersey Casino Control Act, N.J.Stat. Ann. §§ 5:12–1 to –190 (West Supp.1987). Specifically, Local 54 argues that sections 86(f) and 93 of the Casino Control Act violate the union's first amendment rights of freedom of association and expression and its fourteenth amendment right of due process.

### JURISDICTION AND SCOPE OF REVIEW

In this action for declaratory and injunctive relief, Local 54 invoked the jurisdiction of the district court pursuant to 28 U.S.C. §§ 1331, 1343 and 2201 (1982). We have jurisdiction under 28 U.S.C. § 1291 (1982) to review the order of the district court granting appellees' motion for summary judgment. Our review of grants of summary judgment is plenary. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### FACTS

Local 54 is a New Jersey labor organization that represents, among others, casino industry employees. Frank Gerace was the president of Local 54; Frank Materio was a business agent of Local 54.

On September 28, 1982, the Commission issued an order ("1982 order") requiring that Gerace, Materio, and Karlos LaSane be removed as officers, agents or principal

employees of Local 54. The 1982 order further provided that if the named individuals retained their union positions beyond a specified date, Local 54 would be prohibited from collecting dues from certain casino industry employees. The basis for the Commission's order was a finding that Gerace and Materio were disqualified under § 86(f) of the Casino Control Act as a result of their association with Nicodemus Scarfo, a reputed member of organized crime, and that La Sane was disqualified under section 86(c) as a result of a criminal conviction.

On September 12, 1984, the Commission entered an order ("1984 order") requiring that Gerace, Materio, and LaSane "cease acting as officers, agents or principal employees of Hotel and Restaurant Employees and Bartenders International Union Local 54 by September 28, 1984." [1]

The lengthy procedural history of this action need not be recounted for the purposes of this appeal. *See Hotel and Restaurant Employees and Bartenders Int'l Union Local 54 v. Read*, 641 F.Supp. 757 (D.N.J.1986) (setting forth procedural history of this action). Local 54 chose to pursue its federal claims against the Casino Control Act in the federal court. The district court rejected its claims. *Id.* This appeal followed.

### THE RIGHTS ASSERTED BY THE UNION

As a threshold matter, we must determine the nature of the rights that the union claims were violated by the application of the Casino Control Act. It is necessary to distinguish the rights which are asserted by the union from those which were asserted by the disqualified union officials. The disqualified union officials chose to pursue their claims in the New Jersey state court, which rejected those claims and upheld the challenged sections of the Casino Control Act. *In the Matter of Hotel and Restaurant Employees and Bartenders Int'l Union Local 54*, 203 N.J.Super. 297, 496 A.2d 1111 (App.Div.1987). The officials' petitions for further appellate review were denied. *In re Local 54*, 102 N.J. 352, 508 A.2d 223 (1986); *Gerace v. New Jersey Casino Control Commission*, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986). This is not an action in which the union is asserting the rights of the disqualified officials. Rather, the union is asserting its own rights.

We begin with the assumption that the union qua union has certain rights that are protected by the first amendment. As a broad proposition, the first amendment protects non-political as well as political activity. *United Mine Workers of America, District 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 223, 88 S.Ct. 353, 356–57, 19 L.Ed.2d 426 (1967). Additionally, some union activity presumably comes within the right to associate for expressive purposes. *See, e.g., Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984) ("implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social [and] economic ... ends"). Local 54's claims require us to examine the impact, if any, of two provisions of the Casino Control Act on the union's assumed rights.

### THE REGISTRATION REQUIREMENT

Local 54 contends that section 93 of the Casino Control Act violates the first amendment by requiring mandatory registration, upon threat of sanction, as a condition precedent to engaging in activities protected by the first amendment and by section 7 of the National Labor Relations Act. *See* N.J.Stat.Ann. § 5:12–93 (West Supp. 1987). Section 93 states in pertinent part:

---

**1.** The 1984 order was issued in response to the Division's petition for a supplemental order. There is some disagreement among the parties about the continuing enforceability of the 1982 order. The Commission contends that it seeks only the removal of the disqualified officers, as required by the 1984 order. The union contends that the 1982 order directs sanctions at the union that violate the union's first amendment rights. Because we conclude that the removal of the union officers does not violate any first amendment right of the union, we need not decide whether the 1982 order is enforceable at the present time.

a. Each labor organization, union or affiliate seeking to represent employees licensed or registered under this act and employed by a casino hotel or a casino licensee shall register with the commission annually, and shall disclose such information to the commission as the commission may require, including the names of all affiliated organizations, pension and welfare systems and all officers and agents of such organizations and systems; provided, however, that no labor organization, union, or affiliate shall be required to furnish such information to the extent such information is included in a report filed by any labor organization, union, or affiliate with the Secretary of Labor pursuant to 29 U.S.C. § 431 et seq. or § 1001 et seq. if a copy of such report, or of the portion thereof containing such information, is furnished to the commission pursuant to the aforesaid federal provisions. The commission may in its discretion exempt any labor organization, union, or affiliate from the registration requirements of this subsection where the commission finds that such organization, union or affiliate is not the certified bargaining representative of any employee licensed or registered under this act, is not involved actively, directly or substantially in the control or direction of the representation of any such employee, and is not seeking to do so.

■ The district court held that section 93(a) imposed no burden on Local 54's right of free association. The district court noted that the Supreme Court had stated in an earlier phase of this case that the union had "not shown that this requirement of registration imposes any burden on them." *Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union Local 54*, 468 U.S. 491, 510 n. 15, 104 S.Ct. 3179, 3190 n. 15, 82 L.Ed.2d 373 (1984). Although the Court made this statement when considering a preemption argument, it is equally applicable now. Local 54 has failed to allege any infringement of the union's first amendment rights caused by the registration requirement. Local 54 has complied with section 93 and has engaged in organizational and representational activities.

Accordingly, Local 54 has not been sanctioned for failing to comply with section 93(a). Thus, we conclude that the union's claim that the potential sanctions for failure to register are constitutionally unsound is not ripe for determination.

■ Additionally, Local 54 has failed to allege that compliance with section 93(a) has discouraged it from any activity protected by the first amendment. This is not a statutory scheme that requires unions to register before disseminating their ideas. *Cf. Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). Furthermore, a filing requirement does not, in and of itself, infringe on union activity protected under the National Labor Relations Act. *Hill v. Florida*, 325 U.S. 538, 543, 65 S.Ct. 1373, 1375, 89 L.Ed. 1782 (1945). Thus, we find that the existence and application of the registration requirement in this action are not constitutionally infirm.

### THE DISQUALIFICATION PROVISION

Section 93(b) of the Casino Control Act provides, *inter alia*, that no union required to be registered under section 93(a) can perform certain specified functions if any officer, agent or principal employee of the union is disqualified under section 86 of the Casino Control Act. Section 86 states in pertinent part:

The commission shall deny a casino license to any applicant who is disqualified on the basis of any of the following criteria:

. . . . .

f. The identification of the applicant or any person who is required to be qualified under this act as a condition of a casino license as a career offender or a member of a career offender cartel or an associate of a career offender or career offender cartel in such a manner which creates a reasonable belief that the association is of such a nature as to be inimical to the policy of this act and to gaming operations. For purposes of this section, career offender shall be defined as any person whose behavior is pursued in an

occupational manner or context for the purpose of economic gain, utilizing such methods as are deemed criminal violations of the public policy of this State. A career offender cartel shall be defined as any group of persons who operate together as career offenders;

Local 54 argues that this disqualification provision infringes on its first amendment and due process rights. The union bases this argument on two theories, which we will examine in turn.

First, Local 54 argues that section 86(f) is unconstitutionally overbroad. An overbroad statute is one that is designed to reach activities that are not constitutionally protected, but also reaches activities that are constitutionally protected. Local 54 contends that section 86(f) is overbroad both facially and as applied.[2]

An examination of section 86(f) in conjunction with the expressed policies of the Casino Control Act leads to the conclusion that the purpose of the section is to disqualify persons involved in certain illegal, for-profit relationships. *See* N.J.Stat.Ann. 5:12–1(b)(6)–(7), (9) (West Supp.1987). Such relationships would be "inimical" to the Casino Control Act's articulated purpose of keeping the casino industry free from the influence of organized crime. The illegal relationships at which section 86(f) is aimed do not fall within the protection of the first amendment. Therefore, section 86(f) is impermissibly overbroad only if it also burdens protected relationships.

■ Local 54 suggests that its first amendment right of freedom of association includes a right to elect the officers, agents, and principal employees of its choice for the purpose of bargaining in the casino industry. We find no constitutional support for this proposition. Persons disqualified by section 86(f) are not barred

from membership in unions required to be registered under section 93(b). Rather, they are merely precluded from serving in positions of economic power in such unions. Thus, section 86(f) has no effect on who may or may not join Local 54. We do not find that the union's right of free association extends so far as to include a right to elect particular officers.

■ Furthermore, although Local 54 makes the bare assertion that a right to choose officers lies at the heart of protected expressive activity, it does not suggest that it has in fact been precluded from engaging in expressive activity because its choice of officers has been limited by important state regulation. We do not find that the state's disqualification provision impermissibly burdens the union's expressive activity. Rather, the restriction of section 86(f) is akin to a reasonable regulation of the manner of expression and only incidentally affects the union's expressive activity. Because we find that section 86(f) was constitutionally applied in this action, Local 54's argument that the statute is facially overbroad must fail. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974) (facial vagueness attack on statute that does not infringe on constitutionally protected freedoms can succeed only if statute is incapable of any valid application).

■ Second, Local 54 argues that section 86(f) of the Casino Control Act is so vague that it violates the standards of due process guaranteed by the fourteenth amendment. This vagueness challenge is directed at the standards for disqualification of Casino Control Act registrants. This enactment is classic economic legislation.[3] *See Trade Waste Management Association v. Hughey,* 780 F.2d 221 (3d Cir. 1985). In dealing with such legislation, the Supreme Court has held that

---

**2.** We assume that when Local 54 alleges that section 86(f) is overbroad as applied, it is merely arguing that the Commission's application of section 86(f) violates the union's constitutional rights.

**3.** Local 54 asserts that section 86(f) infringes on first amendment expression and, therefore, is subject to a higher standard of scrutiny when attacked for vagueness. *See, e.g., Smith v. Go-*

*guen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974). After examining the Appellate Division's and the Commission's treatment of section 86(f), we do not find that section 86(f) is capable of reaching expression sheltered by the first amendment. Rather, it is aimed solely at the type of illicit activity that is within the ambit of the state's police power to regulate. Therefore, a lesser degree of statutory specificity is required.

[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of a regulation by its own inquiry, or by resort to an administrative process.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (footnotes omitted).

Local 54 argues that section 86(f) is impermissibly vague on its face. In evaluating a facial challenge to a state statute, this court must consider any limiting construction that a state court or enforcement agency has proffered. *Id.* at 494 n. 5, 102 S.Ct. at 1191 n. 5.

In its discussion of section 86(f) as applied to Gerace and Materio, the Appellate Division posited that the "inimical" criterion of section 86(f) was not overly vague when viewed as part of the overall casino regulatory scheme. *In the Matter of Hotel and Restaurant Employees and Bartenders Int'l Union Local 54,* 203 N.J.Super. 297, 330, 496 A.2d 1111, 1129 (App.Div. 1985). The Appellate Division noted that the term "inimical" was interpreted by the Commission as early as 1979. *Id.* (citing *In re Application of Resorts International Hotel, Inc., for a casino license,* Docket No. 79-CL-1 (Casino Control Commission 1979)). In *Resorts,* the Commission stated that

in considering an alleged association with a career offender, the Commission is concerned with more than the reflection, if any, which the association has on the character of the Applicant, or other person required to be qualified. Even assuming the good character of such a

person, a continuing association with career offenders or other unsuitable persons might well be inimical to the Act or to legalized gaming where the nature and quality of the association would justly call into question the integrity of the regulatory process and of casino operations. Such a question would arise where the nature and quality of the relationship create a risk that the career offender might exercise some degree of influence or control over the association with regard to gaming operations or other business incidental to such operations. The danger of such indirect participation by career offenders or other unsuitable individuals cannot be tolerated.

*Resorts* at 17–19. Thus, the Commission has offered some insight into determining which associations it would find inimical to the anti-corruption policy of the Casino Control Act. In light of this insight, the Appellate Division's interpretation of section 86(f), and the objective standard embodied in section 86(f), we do not find that section 86(f) is unconstitutionally vague on its face.

A statute can also be held unconstitutionally vague if the discretion of those who enforce it is not limited by explicit legislative standards.[4] *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However desirable it may be, precise statutory line drawing is not always constitutionally required. In some circumstances, the "difficulty or impossibility of drawing a statutory line is one of the reasons for supplying merely a statutory guide." *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 399–400, 60 S.Ct. 907, 915, 84 L.Ed. 1263 (1940). We find that section 86(f) is a result of such a circumstance. The New Jersey legislature is not constitutionally required to draft a statute setting forth a description of every association that would lead to disqualification. The legislature is required only to set forth legislative standards for those who will enforce the Casino Control Act. We find that the legislature, in articulating the policies underlying the act and in drafting

**4.** The procedural protections afforded by the Casino Control Act are set forth at N.J.Stat.Ann.

§§ 5:12–107 to –108, –110 (West Supp.1987).

an objective test into section 86(f), has given sufficient direction to those who will enforce the Casino Control Act.

Local 54 also asserts that it has a claim pursuant to 42 U.S.C. § 1983 (1982) for violations under color of state law of the union's first and fourteenth amendment rights. In light of our resolution of the union's constitutional attacks on the Casino Control Act, we find that the district court's disposition of the § 1983 claim was appropriate, and we affirm that disposition.[5]

## CONCLUSION

In light of the foregoing discussion, the judgment of the district court will be affirmed.

---

5. Although Local 54 alleges a § 1983 claim "independent of any constitutional claim," the union has failed to address in its briefs the specific contours or viability of such a claim. Accordingly, we have been given no reason to reverse the district court's disposition of this § 1983 claim.